**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

BLUEGREEN VACATIONS UNLIMITED, INC., a Florida corporation; and BLUEGREEN VACATIONS CORPORATION, a Florida corporation,

       Plaintiffs,

v.

THE MONTGOMERY LAW FIRM, LLC, a Missouri limited liability company; MONTGOMERY & NEWCOMB, LLC, a Missouri limited liability company, M. SCOTT MONTGOMERY, ESQ., an individual, W. TODD NEWCOMB, ESQ., an individual; PRINCIPAL TRANSFER GROUP, LLC, a Missouri limited liability company, JASON LEVI HEMINGWAY, an individual, and CLS, INC. d/b/a ATLAS VACATION REMEDIES and also d/b/a PRINCIPAL TRANSFER GROUP, a Missouri corporation; and SQUARE ONE DEVELOPMENT GROUP, INC.,

       Defendants.

Case No.: 1:19-cv-24704

## <u>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF</u>

Plaintiffs, BLUEGREEN VACATIONS UNLIMITED, INC. ("BVU"), and BLUEGREEN VACATIONS CORPORATION ("BVC") (together, "Plaintiffs" or "Bluegreen"), hereby sue Defendants, THE MONTGOMERY LAW FIRM, LLC, a Missouri limited liability company ("Montgomery Law"); MONTGOMERY & NEWCOMB, LLC, a Missouri limited liability company ("M&N Law"); M. SCOTT MONTGOMERY, ESQ., an individual ("Montgomery"); W. TODD NEWCOMB, ESQ., an individual ("Newcomb") (Montgomery Law, M&N Law, Montgomery, and Newcomb referred to herein as the

"Montgomery Law Defendants"); PRINCIPAL TRANSFER GROUP, LLC, a Missouri limited liability company ("PTG"); JASON LEVI HEMINGWAY, an individual ("Hemingway");  CLS, INC. d/b/a ATLAS VACATION REMEDIES and also d/b/a PRINCIPAL TRANSFER GROUP, a Missouri corporation ("CLS"); and SQUARE ONE DEVELOPMENT GROUP, INC., a Missouri corporation ("Square One") (Square One, PTG, Hemingway, and CLS sometimes referred to herein as the "TPE Defendants") (Montgomery Law Defendants and TPE Defendants referred to collectively throughout as "Defendants") and state:

I.     **Introduction.**

1.     This action is based on the simple premise that it is inherently false and misleading for a non-party to a contract to advertise and sell any ability to legally release a party from the obligations of that contract when that non-party has no legitimate basis or means to do so.

2.     Individuals who purchase timeshare interests through Bluegreen (the "Bluegreen Owners") enter into valid and binding purchase agreements, also referred to as Owner Beneficiary Agreements. If a Bluegreen Owner obtains financing for their purchase, the Bluegreen Owner may also execute a promissory note (the purchase agreement and note, if applicable, are referred to herein as the "Timeshare Contracts").  Those Timeshare Contracts control the benefits and obligations of vacation ownership and the relationship between Bluegreen and the Bluegreen Owners.

3.     Defendants, who are non-parties to the Timeshare Contracts, solicit Bluegreen Owners by advertising and offering the ability to legally release or "cancel" the Bluegreen Owners' from the Timeshare Contracts.

4.     However, under Florida law, the "cancellation" of a Timeshare Contract is a specific, non-waivable rescission right held by Bluegreen Owners that can only be exercised

- 2 -

within a certain time period following the execution of a Timeshare Contract.  *See* Fla. Stat. § 721.10.  It is not a service that can be advertised, sold, or provided in commerce.

5.      By advertising "cancellation" to Bluegreen Owners who are not within the applicable rescission period, Defendants claim that they possess a means of "timeshare cancellation" is inherently false and deceptive.

6.      Defendants even guarantee that Bluegreen Owners will be legally and permanently exited from their Timeshare Contracts if they use Defendants' services.

7.      The following is a representative advertisement published by Hemingway and PTG on the website http://www.principaltransfergroup.com:





8.      The following is a representative advertisement published by Square One at https://squareonehelp.com:



9.      Because a guarantee of this nature would violate ethical rules, including the Florida Bar Rules of Professional Conduct[1], if advertised directly by the Montgomery Law Defendants, the non-lawyer TPE Defendants publish these advertisements and solicit Bluegreen Owners for purported legal services on behalf the Montgomery Law Defendants with their knowledge and consent.

10.      Through these false and misleading advertisements, Defendants deceive Bluegreen Owners into retaining Defendants, at substantial cost, to implement Defendants' purported "cancellation" services related to their Timeshare Contracts.

11.      Unfortunately for these Bluegreen Owners, the "services" Defendants sell typically result in an outcome very different than what Defendants promise.

12.      Once paid, Defendants instruct, deceive, induce, or persuade Bluegreen Owners to stop fulfilling their contractual obligations under the Timeshare Contracts, as a means of facilitating the "exit" or "cancellation".

13.      Even if they state otherwise in writing, Defendants instruct, deceive, induce, or persuade Bluegreen Owners to stop making payments under the Timeshare Contracts.  There are three purposes to doing this:

---

[1] Rule 4-7.13(b), Florida Rules of Professional Conduct, states: ""Deceptive or inherently misleading advertisements include, but are not limited to advertisements that contain: (1) statements or information that can reasonably be interpreted by a prospective client as a prediction or guaranty of success or specific results…".

     i.       it helps Defendants justify their fees by claiming that the Bluegreen Owner is saving money by not making payments to Bluegreen as required by the Timeshare Contracts;

    ii.       it diverts the funds of the Timeshare Owners from Bluegreen to Defendants, causing Bluegreen damages; and

   iii.       it ensures a Bluegreen Owner will go into default on their Timeshare Contract, allowing Defendants to claim success at "cancelling" or "exiting" a Bluegreen Owner from their Timeshare Contract, a false and misleading characterization which harms the Bluegreen Owner.

14.     Defendants do not disclose to the Bluegreen Owners the consequences of ceasing payments, or that their "cancellation" and "exit" will actually result in an unlawful breach of the Timeshare Contracts due to non-payment, leading to a termination of their timeshare interests.

15.     Nevertheless, after the Timeshare Contracts have been terminated for non-payment, Defendants then misrepresent to these former Bluegreen Owners that they were successful in "cancelling" or "exiting" their Timeshare Contracts.

16.     Cancellation or rescission of a contract is very different in nature than a breach and termination.  But Defendants advertise the former only to mislead Bluegreen Owners into the latter.

17.     Each Bluegreen Owner pays Defendants thousands of dollars to essentially breach a Timeshare Contract that the Bluegreen Owner could have breached on his or her own, for free. Defendants' "cancellation" services are therefore illusory, and the Bluegreen Owners often do not realize the scam until after the damage is done when their credit rating is badly hurt due to the default.

18.     Upon information and belief, Defendants routinely refuse refunds to timeshare owners who default on their Timeshare Contract due to non-payment.

**II.     Defendants act in concert to facilitate the scheme.**

19.     In causing the unlawful breach of Timeshare Contracts, each Defendant plays a specific role necessary to effectuate and complete the scheme.   An organizational chart illustrating the inter-relationship amongst the Defendants is attached hereto as **Exhibit 1**.

20.     To lend credibility to the scheme, the TPE Defendants solicit Bluegreen Owners by claiming to provide them with a legal means of releasing them from their Timeshare Contracts. This is the role filled by the Montgomery Law Defendants.

21.     The TPE Defendants directly, or through third-parties, disseminate information about the Montgomery Law Defendants at their presentations and utilize referral forms created and/or approved by the Montgomery Law Defendants.

22.     The promise of a lawyer during the solicitation is critical to the effectiveness and profitability of the scheme as the TPE Defendants are able to charge exorbitant upfront fees under the auspice that the Bluegreen Owner will receive legal services.

23.     Standing behind the apparent credibility of a law firm, the Defendants can also further rationalize their claims of a guaranteed legal release and more effectively induce the Bluegreen Owners to immediately cease further payments and stop communicating with Bluegreen.

24.     The Montgomery Law Defendants then facilitate the transaction by providing the TPE Defendants with a referral form that is executed by the timeshare owner and then provided to the Montgomery Law Defendants.

25.     The TPE Defendants collect the fees paid by timeshare owners before the Montgomery Law Defendants have met with or even spoken to the timeshare owner.

26.     The TPE Defendants share those fees with the Montgomery Law Defendants, with the TPE Defendants receiving a majority of the fees collected.

27.     The Bluegreen Owners never pay the Montgomery Law Defendants directly.

28.     Such an arrangement violates a number of state bar association rules, including, without limitation, Rule 4-7.22 of the Florida Rules of Professional Conduct, which generally prohibits the splitting of attorney fees with referral sources.

29.     As a result, upon information and belief, if a Bluegreen Owner seeks a refund of the fees paid, the Montgomery Law Defendants would be unable to accommodate this request and would instead have the Bluegreen Owner seek a refund from the TPE Defendants directly.

30.     The Montgomery Law Defendants agree in advance to represent the timeshare owners solicited by the TPE Defendants and authorize the TPE Defendants to enter timeshare owners into agreements for services and to collect fees without having ever met the purported 'client'.

31.     As the Montgomery Law Defendants rely on the TPE Defendants to solicit timeshare owners and sign them up using a referral form created by the Montgomery Law Defendants, the Montgomery Law Defendants participate in and approve the TPE Defendants methods of advertising and means of solicitation.  Additionally, at least one of the Montgomery Law Defendants has actively negotiated at least one agreement with at least one of the TPE Defendants.

32.     The Montgomery Law Defendants are aware of, contribute to, and materially participate in the false advertising by the TPE Defendants as detailed herein.

33.     Once signed up, the Montgomery Law Defendants engage in largely perfunctory tasks on behalf of timeshare owners, including the transmission of numerous boilerplate demand

letters from the Montgomery Law Defendants on behalf of Bluegreen Owners.

34.     These form letters allege various misrepresentations by Bluegreen's representatives during the inducement and formation of the Timeshare Contracts.

35.     After the Montgomery Law Defendants send the demand letters, the TPE Defendants do little more than facilitate the exchange of information between the Montgomery Law Defendants and the Bluegreen Owner.  In other words, the TPE Defendants' "exit services" merely involve waiting for the Bluegreen owner to go into default. The advertised services are therefore illusory.

36.     Hemingway, individually, directs and controls the actions of CLS and PTG, including the manner in which the services are marketed and sold to Bluegreen Owners.

37.     Hemingway personally directs the scheme to defraud Bluegreen Owners and harm Bluegreen.

38.     Hemingway is aware that PTG and CLS have no legitimate means of providing the services advertised and created CLS and PTG as shells designed to allow Hemingway to carry out illegal activities.

39.     Montgomery is personally liable for the actions of Montgomery Law and M&N Law as he is a principal partner in each of the firms and has personal, direct and total control over all aspects of the firms, their interworking and their actions.

40.     Newcomb is personally liable for the actions of M&N Law as he is a principal partner of the firms and has personal direct and total control over all aspects of the firms, their interworking and their actions.

III.     **Defendants engage in false and misleading advertising.**

41.     The Defendants deploy various methods of false and misleading advertising targeted at Bluegreen Owners to solicit the Defendants' so-called "exit" or "transfer" services.

42.     While most of the Defendants operate websites that advertise their so-called services, the TPE Defendants also work independently and jointly to host in-person sales presentations, conduct sales calls, and send mail advertisements to Bluegreen Owners.  Often, the telemarketing and mail marketing efforts are aimed at getting Bluegreen Owners to an in-person sales presentation.

43.     The ultimate goal of the various methods of advertising and solicitation is to convince Bluegreen Owners that the Defendants have the ability to legally release the Bluegreen Owner from their Timeshare Contract.   As the Defendants do not have this ability, their advertising is, by nature, false and/or misleading.

**a.  General Content of the False and/or Misleading Advertising.**

44.     Regardless of the method of advertising, the advertising content is generally consistent (and consistently false and/or misleading) among the numerous TPE Defendants.

45.     At their core, the advertisements falsely represent how the TPE Defendants supposedly assist Bluegreen Owners with the termination of their Timeshare Contracts.  In short, TPE Defendants mislead Bluegreen Owners into thinking that the Defendants' services and commercial activities will lead to a lawful release, rescission, cancellation, or transfer of their Timeshare Contracts, when in reality, the Defendants deceive and induce Bluegreen Owners into breaching the Timeshare Contracts which unlawfully terminates those Timeshare Contracts.

46.     The advertisements are false and/or misleading by including one of more of the following promises about the Defendants' services:

      i.     Stating that their services or commercial activities provide an "exit," "cancellation," or "release" of a timeshare contract, or by using any other word or phrase (i.e. "get out") that means or implies the lawful release of the timeshare owner's obligations under a timeshare contract.

ii.      Stating that their services or commercial activities provide a "process" or "method" that results in a timeshare owner being free from the obligations and benefits of a timeshare contract.

iii.     Stating that their services or commercial activities provide a "legal," "lawful," "legitimate," or "safe" means of cancelling or transferring a timeshare contract or otherwise releasing or freeing a timeshare owner from the obligations and benefits of a timeshare contract.  The TPE Defendants falsely equate (i) the termination of a Timeshare Contract through breach(the actual result of their "cancellation" or "transfer" services) with (ii) a "lawful" or "legitimate" result.

iv.      Stating that their services or commercial activities provide a "guaranteed" means of cancelling or transferring a timeshare contract or otherwise releasing or freeing a timeshare owner from the obligations and benefits of a timeshare contract.

i.       Stating that their services or commercial activities allow a timeshare owner to stop paying mortgage payments or fees, including maintenance fees, or to otherwise avoid the contractual obligations of a timeshare contract.

47.      Hemingway, through CLS and/or PTG, owns, operates, controls, and/or is otherwise responsible for the content of www.principaltransfergroup.com and www.atlasvacationremedies.com, among others.

48.      The content of www.principaltransfergroup.com includes or has included the following statements:

  i.  "Our solutions are tailored to each individual client, and the method we use to get you out of your timeshare depends on your particular situation. We have a very skilled in-house team, but we will retain an attorney on your behalf if needed. Because each client's situation is unique, the time frame can vary for each customer. Typically we can have you out in 120 - 180 days. Rest assured that we stand by our 100% money-back guarantee. We will do what we say or we will refund every cent." (www.principaltransfergroup.com)

  ii.  "You're Timeshare Free!  After we have successfully eliminated your obligation to your timeshare, you will receive notification from your Client Management team to share the good news, and you will also receive written confirmation of the elimination for your records. Read testimonials below from other former timeshare owners about their experience with our services." (www.principaltransfergroup.com)

  iii.  "Are there any requirements for using our service?  We can help people in almost any circumstance. Remember, with our free consultation and our 100% money back guarantee you can determine if we are the right choice for you to partner with."  (www.principaltransfergroup.com)

  iv.  "Will my name be off the Timeshare ownership documents?  Yes! Ownership is legitimately transferred. Depending on the property of record, title is transferred via deed, membership, lease, assignment, or as required by resort official governing documents (covenants, conditions, restrictions)." (www.principaltransfergroup.com)

     v.        "What happens if you are unsuccessful at exiting me from my timeshare? In the very rare situation that we are unable to obtain a successful exit opportunity, we proudly stand by our 100% money back guarantee and you will receive a full refund of your fee." (www.principaltransfergroup.com)

49.    Upon information and belief, CLS and PTG has engaged in false and/or misleading advertising through fake consumer reviews on their websites, www.atlasvacationremedies.com and www.principaltransfergroup.com:

     i.        Both the Atlas Vacation Remedies website and the Principal Transfer Group website list the following 'reviews'/'testimonials':

          i.     "I would recommend Principal Transfer Group[2] to anyone looking to get out of their timeshare.  We are free and clear of ours and couldn't be happier!  Thank you!  - Susan M.";

          ii.     "Everyone that I spoke with and everyone that I worked with were very professional, honest and stayed in contact with me throughout the process. I would recommend this company to anyone that needs to get out of their timeshare.  – Pam S."; and

          iii.    "Our consultant was very understanding of our particular situation and worked with us to find the best fit for us from the program they have in place. I would highly recommend that anyone looking to get out of their timeshare to give them a call. There are no high-pressure sales tactics with this company. We asked for a few days

---

[2] This is not a typo, the 'Customer Review' for 'Susan M.' on the Atlas Vacation Remedies website refers to Principal Transfer Group.

to look things over and call them back. We called them a week

later and the deal was still good. We are now timeshare free and

could not be happier. Thanks Principal Transfer Group!  - Thomas

J.".

    ii.      CLS and/or PTG's website has also contained "stock" photographs of the

alleged 'reviewers' to make it appear as if they are real people when they

are, in fact, not.

50.     Square One owns, operates, controls, and/or is otherwise responsible for the

content of www.squareonehelp.com.

51.     The content of www.squareonehelp.com includes or has included the following

statements:

    i.      "When enough is enough, we step in with our industry leading

timeshare specialists, legal team, and quality assurance personnel

and take the reins." (www.squareonehelp.com)

    ii.      "No more being bullied by the big timeshare conglomerates. We

will take the proper steps to legally and permanently relieve you

and your family of your timeshare's financial liability, freeing you

and your family from decades of fees and headaches."

(www.squareonehelp.com)

    iii.     "Square One Group's unparalleled timeshare elimination process

will rid you of your unwanted timeshare."

(www.squareonehelp.com)

- 13 -

iv.   "The resorts are shielded with layers of legal protection created by their attorneys and lobbyists that makes it feel virtually impossible to get rid of your timeshare without expert help and representation." (www.squareonehelp.com)

v.   "Upon receiving all necessary documents, we have a full picture of your ownership situation, allowing us to identify the best exit strategy for you. We put together a team of exclusive network partners and attorneys who will transfer ownership or negotiate to get you out of your timeshare. Our approach is unmatched and has allowed us to obtain exits from over one thousand different resorts."  (www.squareonehelp.com/services/)

vi.   "The exit timeline will depend on a variety of factors, but typically ranges between 3 to 6 months. We are always searching the market for new exit opportunities and will adjust your case strategy if a more expedited exit path is identified. We hold ourselves and our partners accountable for finding you the quickest exit possible. Square One Group guarantees you will be exited from ownership safely, legally, and forever, or you receive your money back." (www.squareonehelp.com/services/)

vii.   "We stand behind our 100% money back guarantee." (www.squareonehelp.com/services/)

52.   In addition, according to the Better Business Bureau website, Square One also previously falsely advertised that it had an A+ BBB Rating, and the BBB was required to send a

- 14 -

cease and desist letter to stop Square One's false advertising. https://www.bbb.org/us/mo/des-peres/profile/timeshare-cancellation/square-one-development-group-inc-0734-1000010028/details#Alert.

> **b.    In-Person Sales Presentations**

53.    The TPE Defendants conduct much of their sales activity through in-person presentations to Bluegreen Owners, which are conducted using scripts and standardized presentations.

54.    The TPE Defendants have teams of employees or agents (often called "consultants") who travel the country to make sales presentations to timeshare owners.

55.    The presentations typically begin in a speaker-audience setting and end with one-on-one pitches during which the consultants pressure individual Bluegreen Owners to procure the advertised "cancellation" or "transfer" services.

56.    The consultants for these TPE Defendants use a variety of tricks to deceive Bluegreen Owners into believing that a company such as theirs can actually and legitimately cancel or transfer a Timeshare Contract, including, of course, the basic misrepresentation that a company such as theirs can actually and legitimately cancel or transfer a Timeshare Contract.

57.    By example, Square One falsely claims that they are "watchdogs" for American Resort Development Association ("ARDA"), an industry trade association that promotes the growth and development of the timeshare industry.

58.    Square One does not have any affiliation with ARDA and has never worked on behalf of ARDA.

59.    Square One has told consumers that Square One is affiliated with ARDA.

60.    Square One has told consumers that Square One works on behalf of ARDA.

61.     ARDA issued a Consumer Alert noting that Square One "uses <u>false and misleading information</u> to pressure consumers into purchasing timeshare exit" services and that Square One is "in **NO WAY** affiliated with ARDA."  A copy of this Consumer Alert is attached hereto as **Exhibit 2**.

62.     The fees charged by the TPE Defendants at these sales presentations are not representative of any actual work to be performed, but are rather based upon what the consultant can convince the timeshare owner to pay and the credit limits available to the timeshare owner.

63.     The TPE Defendants, through their consultants, inflate the cost of their so-called cancellation services by including exorbitant attorney's fees in their cost calculations, even though the actual fees they divert to the lawyers are a fraction of what the TPE Defendants receive.

64.     Finally, the TPE Defendants usually offer their prospective customers the option of paying with instantly-approved credit card accounts. The amount charged to the timeshare owner often depends on the TPE Defendants ability to complete multiple credit applications on-site and run up charges on these new lines of credit.  These transactions are difficult to challenge when and if the Bluegreen Owners eventually discover the fraudulent outcome.

       **c.**     **Telemarketing**

65.     The TPE Defendants promote and advertise their services through telemarketing efforts, as well.

66.     Often the purpose of these telemarketing efforts is to convince Bluegreen Owners to attend an upcoming, nearby presentation.

67.     For example, the TPE Defendants will call timeshare owners, including Bluegreen Owners, offering invitations to nearby presentations with a free meal.  The telemarketers falsely

state, based on their predetermined script, that owners who attend will learn how to get rid of their timeshare interests.

68.     Invitations or not, each TPE Defendant has at some point operated a call center itself, or contracted with another marketing entity, to solicit Bluegreen Owners with the types of false statements described above.

### d.     Direct Mail Advertising

69.     As with the telemarketing efforts, each TPE Defendant (or its agent) has mailed misleading advertisements to Bluegreen Owners.

70.     These mailers contain false and misleading statements, including claims that the TPE Defendants can "recover 100% of your timeshare's full purchase price!"

71.     A copy of this type of mailer sent by Square One is attached hereto as **Exhibit 3**.

72.     The mailers sent by the TPE Defendants also offer money-back guarantees in order to deceive Bluegreen Owners into believing that their services are legitimate and proven.

73.     All of the Defendants have engaged in direct mail marketing, either directly themselves or through a marketing entity, to solicit Bluegreen Owners with the types of false statements described above.

74.     The false advertisements described above are not puffery. Thousands of consumers have fallen prey to Defendants' false and/or deceptively misleading advertisements and have retained Defendants to render Defendants' illusory services.

75.     In fact, at least one Defendant to this action, Square One, has acknowledged in court filings the falsity of Defendants' advertising.

76.     On September 17, 2019, Square One sued CLS, PTG, Montgomery Law, and M&N Law alleging fraud, among other claims, as a result of these Defendants false representations "that they would assist and facilitate timeshare exits."  A copy of this lawsuit is

attached hereto as **Exhibit 4**.   Thus, Square One knows that the advertisements made by Defendants are false and/or misleading.

77.    The advertisements described in paragraphs  5, 8, 20, 44-46, 51, 52, 56-60, 67, 70, and 71-73 may be collectively referred to hereinafter as the "Square One False Advertisements".

78.    The advertisements described above in paragraphs 5, 7, 20, 44-46, 48, 49, 56, 67, and 70 may be collectively referred to hereinafter as the "Hemingway False Advertisements".

79.    Consumers have paid Defendants thousands or tens of thousands of dollars each for Defendants' 'guaranteed', 'safe', 'proven', and 'effective' 'process', only to go into default and have their timeshare interests terminated for non-payment.  No rational consumer would pay such sums of monies to a third-party if they were aware that the advertised 'process' was simply the consumer going into default as a consequence of stopping payments.

80.    Defendants' false and misleading advertisements cause direct harm to Bluegreen in that these false and misleading advertisements misrepresent Defendants' services.

81.    Defendants exist for the sole purpose of interfering in Bluegreen's Timeshare Contracts with the Bluegreen Owners.  Because Bluegreen Owners can be either a customer of Defendants, or a customer of Bluegreen, but not both, they are competitors and there is a direct relationship between Defendants false and/or deceptively misleading advertising and harm to Bluegreen in that the false and misleading advertisements are solely designed to induce Bluegreen Owners into retaining Defendants, who then immediately instruct those Bluegreen Owners to cease making payments to Bluegreen.

### IV.    Bluegreen's right to injunctive relief.

82.    Defendants' solicitation of Bluegreen Owners using false and misleading advertising and their subsequent instruction to and/or persuasion of the Bluegreen Owners to stop making payments on the Timeshare Contracts, including all mortgage, maintenance, and

club dues associated with their timeshares, regardless of whether any valid legal basis exists for the cancellation with Bluegreen, is harming Bluegreen.

83.     Defendants continue to engage and intend to further engage in the unlawful conduct described above.

84.     Defendants' actions present an immediate threat of irreparable harm to Bluegreen, and Bluegreen will suffer irreparable harm if Defendants, and their agents, affiliated companies or entities, representatives and employees, are not enjoined from this conduct.

85.     The threat of irreparable harm is continuing because Defendants currently engage in an ongoing business whereby they solicit Bluegreen Owners using the false and misleading advertising outlined above; and then convince the Bluegreen Owners to immediately stop paying.

86.     Non-defaulting Bluegreen Owners are also damaged because the non-payment of club dues and maintenance fees by the defaulting Bluegreen Owners force the non-defaulting Bluegreen Owners to incur higher fees/payments as a result of the deficiencies caused by Defendants' ongoing actions.

87.     Bluegreen will imminently have thousands of dollars in delinquent mortgage payments owed to them and will be forced to expend resources to recoup these monies to no end as Defendants refuse to cease and desist from this tortious conduct.

88.     Bluegreen has no adequate remedy at law as damages will not address the harm Bluegreen will suffer if Defendants are permitted to continue with this tortious conduct.

89.     The injury and potential harm caused by Defendants' intentional inference with Bluegreen's relationships outweigh the harm, if any, that an injunction would cause to Defendants.

90. The issuance of the requested injunction will serve the public interest by protecting Bluegreen's legitimate business interests and the interests of the Bluegreen Owners, and by restraining the unlawful, disruptive and tortious actions committed by Defendants.

91. Moreover, Bluegreen has a right to injunctive relief under both the Lanham Act and the Florida Deceptive and Unfair Trade Practices Act.

## V.  Parties, Jurisdiction, and Venue.

### a. The Plaintiffs

92. Plaintiff, Bluegreen Vacations Corporation ("BVC"), is a Florida corporation organized with its principal place of business located at 4960 Conference Way North, Suite 100, Boca Raton, FL 33431.

93. Plaintiff, Bluegreen Vacations Unlimited, Inc. ("BVU"), is a Florida corporation with its principal place of business located at 4960 Conference Way North, Suite 100, Boca Raton, FL 33431.  BVU is a wholly owned subsidiary of BVC.

### b. The Defendants

94. Montgomery Law is a limited liability company organized and existing under the laws of the State of Missouri with its registered business address and registered agent, M. Scott Montgomery, both located at 901 E Saint Louis Street, Suite 1200, Springfield, Missouri 65806. Upon information and belief, Montgomery Law also maintains its principal place of business at 435 E Walnut Street, Springfield, Missouri 65806.

95. M&N Law is a limited liability company organized and existing under the laws of the State of Missouri with its registered business address and registered agent, M. Scott Montgomery, both located at 901 E Saint Louis Street, Suite 1200, Springfield, Missouri 65806.

- 20 -

M&N Law further maintains its principal office at 435 E Walnut Street, Springfield, Missouri 65806.

96.     Montgomery is an individual and resident of the State of Missouri who can be found at 435 E Walnut Street, Springfield, Missouri 65806 and is otherwise *sui juris*.

97.     Newcomb is an individual and resident of the State of Missouri who can be found at 901 E Saint Louis Street, Suite 1201, Springfield, Missouri 65806 and is otherwise *sui juris*.

98.     Square One is a corporation organized and existing under the law of the State of Missouri with its principal place of business located at 1610 Des Peres Road, Suite 150, Saint Louis, Missouri 63131, and its registered agent, Timothy R. McFadden, located at 44 Meadowbrook CC Estates, Ballwin, Missouri 63011.

99.     CLS is a corporation organized and existing under the laws of the State of Missouri with its principal place of business and registered agent, Donnelly Snellen, both located at 6906 Route M, Jefferson City, Missouri 65101.

100.    CLS operates under the fictitious name: 'Principal Transfer Group', which is registered with the Missouri Secretary of State twice.  According to these active fictitious name registrations, CLS maintains or has maintained mailing addresses at 708 Missouri Boulevard, Jefferson City, Missouri 65101 and 901 E Saint Louis Street, Suite 1201, Springfield, Missouri 65806, the latter of which is a location shared with the Montgomery Law Defendants.

101.    In addition to the two fictitious name filings for 'Principal Transfer Group, PTG is itself a limited liability company organized and existing under the laws of the State of Missouri with a registered address and agent, Donald M. Brown, both located at 111 W. Broadway, Bolivar, Missouri 65613.  PTG maintains a principal place of business at 901 E Saint Louis Street, Suite 1201, Springfield, Missouri 65806.

102.    PTG and CLS are alter-egos and affiliates for at least the following reasons:

    i.      PTG shares its names with the fictitious names registered by CLS (*see* **Exhibit 5** – Registration of Fictitious Name by CLS filed 1/4/2018) (*see* **Exhibit 6** – Registration of Fictitious Name by CLS filed 8/9/2018) ;

    ii.     they share the same address, for example, CLS registered CLS's two fictitious names as doing business at 901 E Saint Louis Street, Suite 1201, Springfield, MO 65806, while PTG also indicated in a statement filed with the Missouri Secretary of State that it is located at 901 E Saint Louis Street, Suite 1201, Springfield, Missouri 65806 (*see* **Exhibit** 7 – Statement of Change of Business Office Address);

    iii.    they share logos, for example, both CLS and PTG use the following logo:



    iv.    they share phone numbers, for example, CLS and PTG both utilize (417) 612-9500;

v.      they share websites, for example, both CLS and PTG utilize www.principaltransfergroup.com;

vi.     CLS and PTG share common ownership and/or control; and

vii.    CLS and PTG engage in common marketing and solicitation, and common business schemes, as more fully set forth herein.

In sum, there is no way to determine the difference between CLS and PTG – all three operate using identical names out of the same office, utilizing the same logos, phone numbers, and websites.

103.    Square One is related to Hemingway, CLS and PTG because Square One advertises, shares business with, and refers customers, including Bluegreen Owners, to Hemingway, CLS, and/or PTG.

104.    In referring timeshare owners to the Montgomery Law Defendants, Square One utilizes attorney referral forms which refer to PTG.

105.    Hemingway is an individual and resident of the State of Missouri.  Hemingway was formerly committed to the Missouri Department of Corrections and may presently be reached through, at least, his parole officer, Jennifer Kimberlin, at 2530 South Campbell, Suite H, Springfield, Missouri 65807.

c. **Subject Matter Jurisdiction**

106.    This Court has subject matter jurisdiction over the claims sounding in the Lanham Act alleged herein pursuant to 28 U.S.C. §§ 1331 and 1338.  This Court has subject matter jurisdiction over the claims sounding in state law alleged herein pursuant to 28 U.S.C. § 1367 as the state law claims are so related to the Lanham Act claims that they form part of the same case or controversy.

**d.  Personal Jurisdiction**

107.   This Court has personal jurisdiction over the Defendants for the following reasons:

      i.      over all Defendants because their actions, as more fully described herein below, are directed at consumers across the country, including consumers in the state of Florida.  All Defendants operate websites that are freely accessible from Florida and target consumers in the State of Florida, which involves, *inter* alia, the repeated transmission of files over the Internet in, to, and out of the State of Florida;

      ii.      over all Defendants as they operate together and cause false demand letters to be directed to Bluegreen in the State of Florida, indeed, all actions of Defendants are designed to interfere with Bluegreen's business, which involves the repeated use of the wires and mails by Defendants to transmit correspondence and other items into the State of Florida;

      iii.      at least some of the Timeshare Contracts and Timeshare Owners at issue in this civil action were entered into in Florida or are Florida residents; and/or

      iv.      committing acts and torts which caused injury to Plaintiffs in Florida.

108.   For the foregoing reasons, the Court has personal jurisdiction over all Defendants.

**e.  Venue**

109.   Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391 because, as described herein, a substantial part of the events giving rise to Plaintiffs' claims occurred in Florida, because the Defendants ultimately harm the consuming public and

Bluegreen in Florida, and Defendants' conduct giving rise to the claims set forth herein occurred in this District.

**f.**   **Conditions Precedent, Attorneys' Fees**

110.   All conditions precedent to the bringing and maintenance of this action have been performed, were waived, would be futile if attempted, or have otherwise been satisfied or occurred.

111.   Bluegreen has retained the services of the undersigned lawyers to represent it in this matter and have obligated themselves to pay reasonable attorneys' fees, which fees are recoverable against Defendants pursuant to 15 U.S.C. § 1117 and the Florida Deceptive and Unfair Trade Practices Act, and other statutes, as set forth in greater detail herein.

**VI.**   **Causes of Action.**

**COUNT I**
**Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)**
(against Hemingway, PTG and CLS)

112.   Bluegreen adopts and realleges paragraphs 1-7, 9-49, 53-56, and 62-111 above as if fully set forth herein.

113.   This is an action for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1) which arises from the false and misleading advertisements made by or at the direction of Hemingway, PTG, and CLS regarding Defendants' own services.

114.   Hemingway, PTG, and CLS willfully, deliberately, and egregiously made false or misleading statements of fact in their commercial advertisements and intended to mislead consumers.

115.   These false and misleading advertisements include, but are not limited to, the Hemingway False Advertising described above. These statements, incorporated herein, were

literally false, either on their face or by necessary implication, as set forth herein, or materially misleading.

116.    The Hemingway False Advertising described above were commercial speech made by a defendant acting in competition to Bluegreen by trying to interfere with Bluegreen's business relationships for the Defendants' own financial gain, for the purpose of influencing consumers to retain the Defendants' services, and were disseminated sufficiently to the timeshare owning public to constitute advertising or promotion within the timeshare industry.

117.    The Hemingway False Advertising either deceived or had the capacity to deceive a substantial segment of the consuming public.

118.    Hemingway, CLS, and PTG's deception is material, in that it is likely to influence the consumers' decisions whether to retain Defendants' services or to cease making payments to Bluegreen.

119.    The Defendants' advertised services affect interstate commerce.

120.    Hemingway, CLS, and PTG are operating as competitors to Bluegreen.  Once a Bluegreen Owner enters into an agreement with these Defendants, the sole purpose of that agreement is to cause that Bluegreen Owner to withdraw his or her business from Bluegreen, effectively converting that individual from a Bluegreen Owner to a customer of the Defendant.

121.    Bluegreen has been and continues to be injured as a result of these false and misleading statements.

122.    Pursuant to 15 U.S.C. § 1117, Bluegreen is entitled to recover (i) its actual damages sustained as a result of the false advertising, (ii) Defendants' profits resulting from their false advertising to Bluegreen Owners, and (iii) the costs of the action.

123.   Pursuant to 15 U.S.C. § 1116, Bluegreen seeks an injunction upon such terms as the Court may deem reasonable, to prevent further violations by Defendants of 15 U.S.C. 1125(a).

WHEREFORE, Bluegreen respectfully request the Court enter final judgment in their favor and against Hemingway, CLS, and PTG, jointly and severally, for damages, corrective advertising, and disgorgement of profits, together with interest thereon, an award of court costs, a determination that the instant civil action is an exceptional case and awarding Plaintiffs their attorneys' fees, entry of injunctive relief, and for such other and further relief as the Court deems appropriate. Bluegreen demands a permanent injunction be entered against Hemingway, CLS, and PTG, as well as their agents, representatives, employees, affiliates, prohibiting the publishing of false and misleading statements in advertising, including but not limited to their websites or other electronic or print media or materials, advertising any ability to cancel or exit Bluegreen Owners' from their Timeshare Contracts.

## COUNT II
## Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)
(against Square One)

124.   Bluegreen adopts and realleges paragraphs 1-6, 7-35, 41-46, 50-111 above as if fully set forth herein.

125.   This is an action for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1) which arises from the false and misleading advertisements made by or at the direction of Square One regarding Defendants' own services.

126.   Square One willfully, deliberately, and egregiously made false or misleading statements of fact in their commercial advertisements and intended to mislead consumers.

127.   These false and misleading advertisements include, but are not limited to, the Square One False Advertising described above. These statements, incorporated herein, were

- 27 -

literally false, either on their face or by necessary implication, as set forth herein, or materially misleading.

128.    The Square One False Advertising described above were commercial speech made by a defendant acting in competition to Bluegreen by trying to interfere with Bluegreen's business relationships for the Defendants' own financial gain, for the purpose of influencing consumers to retain the Defendants' services, and were disseminated sufficiently to the timeshare owning public to constitute advertising or promotion within the timeshare industry.

129.    The Square One False Advertising either deceived or had the capacity to deceive a substantial segment of the consuming public.

130.    Square One's deception is material, in that it is likely to influence the consumers' decisions whether to retain Defendants' services or to cease making payments to Bluegreen.

131.    The Defendants' advertised services affect interstate commerce.

132.    Square One operates as a competitor to Bluegreen.  Once a Bluegreen Owner enters into an agreement with these Defendants, the sole purpose of that agreement is to cause that Bluegreen Owner to withdraw his or her business from Bluegreen, effectively converting that individual from a Bluegreen Owner to a customer of the Defendant.

133.    Bluegreen has been and continues to be injured as a result of these false and misleading statements.

134.    Pursuant to 15 U.S.C. § 1117, Bluegreen is entitled to recover (i) its actual damages sustained as a result of the false advertising, (ii) Defendants' profits resulting from their false advertising to Bluegreen Owners, and (iii) the costs of the action.

135.     Pursuant to 15 U.S.C. § 1116, Bluegreen seeks an injunction upon such terms as the Court may deem reasonable, to prevent further violations by Defendants of 15 U.S.C. 1125(a).

WHEREFORE, Bluegreen respectfully request the Court enter final judgment in their favor and against Square One, for damages, corrective advertising, and disgorgement of profits, together with interest thereon, an award of court costs, a determination that the instant civil action is an exceptional case and awarding Bluegreen their attorneys' fees, entry of injunctive relief, and for such other and further relief as the Court deems appropriate. Bluegreen demands a permanent injunction be entered against Square One, as well as their agents, representatives, owners, employees, and affiliates, prohibiting the publishing of false and misleading statements in advertising, including but not limited to Square One's websites or other electronic or print media or materials, advertising any ability to cancel or exit Bluegreen Owners' from their Timeshare Contracts.

## COUNT III
## Contributory False Advertising in Violation of the Lanham Act, 15 U.S.C. §1125(a)(1)
### (against the Montgomery Law Defendants)

136.     Bluegreen adopts and realleges paragraphs 1-111 above as if fully set forth herein.

137.     This is an action for a contributory violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

138.     The TPE Defendants willfully, deliberately, and egregiously made false or misleading statements of fact in their commercial advertisements and intended to mislead consumers.  The statements described above and incorporated herein were literally false, either on their face or by necessary implication, as set forth herein.

139.     Bluegreen has been and continues to be injured as a result of the TPE Defendants false and misleading statements.

140.    The Montgomery Law Defendants have contributed and continue to contribute to the TPE Defendants' false advertising by knowingly inducing or causing the conduct, or by materially participating in it and/or accepting the benefits of it.

141.    The Montgomery Law Defendants explicitly or implicitly encourage the false advertising because they have agreed to accept the referral of consumers deceived by the false advertising.  Without the Montgomery Law Defendants' willingness to accept those consumers as clients, the TPE Defendants could not advertise what they do.

142.    The TPE Defendants false advertisements are public, serious, and widespread, and the Montgomery Law Defendants have full knowledge of such advertising and condone it.

143.    More than that, the Montgomery Law Defendants financially gain from the false advertisements in the form of client referrals and fee splitting with the TPE Defendants.

144.    In other words, the Montgomery Law Defendants' business derives much, if not all, of its revenue from the consumers solicited through the TPE Defendants false advertising, more specifically, the Square One False Advertisements and the Hemingway False Advertisements.

145.    Pursuant to 15 U.S.C. § 1117, Bluegreen is entitled to recover (i) its actual damages sustained as a result of the false advertising by the TPE Defendants, (ii) the Montgomery Law Defendants' profits resulting from the TPE Defendants' false advertising to Bluegreen Owners, and (iii) the costs of the action.

146.    Pursuant to 15 U.S.C. § 1116, Bluegreen seeks an injunction upon such terms as the Court may deem reasonable, to prevent further contributory violations by the Montgomery Law Defendants of 15 U.S.C. 1125(a).

WHEREFORE, Bluegreen respectfully request the Court enter final judgment in their favor and against the Montgomery Law Defendants, jointly and severally, for damages, corrective advertising, and disgorgement of the Montgomery Law Defendants' profits, together with interest thereon, an award of court costs, a determination that the instant civil action is an exceptional case and awarding Bluegreen their attorneys' fees, entry of injunctive relief, and for such other and further relief as the Court deems appropriate. Bluegreen demand a permanent injunction be entered against the Montgomery Law Defendants, as well as their agents, representatives, employees, affiliates, prohibiting the Montgomery Law Defendants from further contributing to the False and Misleading Advertising, including accepting any clients solicited by the TPE Defendants through the false advertising of an ability to cancel or exit Bluegreen Owners' from their Timeshare Contracts.

## COUNT IV
### Tortious Interference with Contractual Relations
(against all Defendants)

147.    Bluegreen adopts and realleges paragraphs 1-111 above as if fully set forth herein.

148.    This is a cause of action for tortious interference with contractual relations.

149.    Bluegreen has contractual relationships with its Bluegreen Owners.

150.    The Defendants have actual, constructive, and/or specific knowledge of the contractual relationships between Bluegreen and the Bluegreen Owners. The very fact that Bluegreen has a business relationship with the Bluegreen Owners is the basis upon which the Defendants sought to establish a relationship with the Bluegreen Owners.  Indeed, if it were not for the existence of the contractual relationships between Bluegreen and the Bluegreen Owners, the  Defendants would have no reason to operate.

- 31 -

151.   The Defendants, through various inter-related entities as described hereinabove, have successfully solicited Bluegreen Owners and caused or induced them to breach and/or terminate their contractual relationships with Bluegreen.

152.   In particular, the Defendants have intentionally procured the breach of Bluegreen's contractual relationships by soliciting identifiable Bluegreen Owners[3] and persuading them to hire the Defendants to help "cancel" (in reality, breach) their Timeshare Contracts. The Defendants also procure breaches by directly instructing Bluegreen Owners to stop paying their timeshare loans and maintenance fees and/or engaging in fraudulent transfers.

153.   If Bluegreen Owners knew the truth about the Defendants' illusory and fraudulent services or about how Defendants' actions would adversely impact them, they would not pay exorbitant fees to the Defendants nor unlawfully breach their Timeshare Contracts.

154.   The Defendants have utilized improper, fraudulent and/or illegal means to interfere with Plaintiffs' contractual relations.

155.   The Defendants' actions were done with an improper motive and not made in good faith, but rather were made with the knowledge and predominant purpose to injure Bluegreen or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from the Defendants' actions and without reasonable grounds for the Defendants to believe that their actions were justified and proper.

156.   As a direct and proximate result of the Defendants' intentional misconduct, Bluegreen Owners have ceased payments to Bluegreen, breached their Timeshare Contracts,

---

[3] The specific Bluegreen Owners and Timeshare Contracts are identifiable.  However, due to the substantial volume and length of said documents it is not practical to attach all of them to this Complaint as they would make the Complaint likely thousands, if not tens-of-thousands of pages long.  Bluegreen can provide the identities and documents in discovery.  Moreover, Defendants are already aware of the identities of these Bluegreen Owners and Timeshare Contracts as Defendants sent Bluegreen letters related to these Bluegreen Owners and Timeshare Contracts.

and/or have otherwise baselessly sought to terminate their contractual relationships with Bluegreen, before the expiration of the terms of those contracts.  These defaults, terminations, and attempted terminations, also interfere with Bluegreen's ability to enter into subsequent transactions with those same Bluegreen Owners.

157.    The Defendants did not and do not have any justification or privilege in procuring the breach of such contractual relationships, as the Defendants are strangers to the contractual relationships between Bluegreen and its Owners, and their interference with Bluegreen's business is willful and malicious.

158.    Furthermore, the Defendants profit greatly by accepting and sharing significant fees from Bluegreen Owners and then performing little or no actual legal work on their behalf to "cancel" their timeshare contracts.   The Defendants are not privileged to interfere with Bluegreen's contractual relationships because the Defendants act in their own personal interests and without an honest belief that the strategy of defaulting on the Timeshare Contracts is justified by the exorbitant fees received by them or even the best course of action to terminate the Timeshare Contract.

159.    The Defendants' across-the-board strategy to induce its clients to breach their Timeshare Contracts is not sound, individualized legal advice done in the course of representation of any clients, but rather an overall business decision of the law firm itself that is not privileged.

160.    As a direct and proximate result of the foregoing, Bluegreen has suffered damages.

161.    Bluegreen is entitled to damages against the Defendants jointly and severally.

162.    The Defendants' ongoing conduct has caused and, if not permanently enjoined, will continue to cause irreparable harm to Bluegreen in the disruption of customer and other contractual relations; therefore, Bluegreen does not have an adequate remedy at law.

163.    The Defendants' conduct is intentional and willful and entitles Bluegreen to an award of punitive damages.

WHEREFORE, Bluegreen respectfully requests the Court enter final judgment in their favor and against the Defendants, jointly and severally, for actual damages, together with interest thereon, punitive damages, an award of court costs, entry of injunctive relief, and for such other and further relief as the Court deems appropriate. Plaintiffs demand a permanent injunction be entered against the Defendants and their agents, representatives, employees, and affiliates, prohibiting the Defendants from contacting Bluegreen Owners and/or otherwise interfering with Plaintiffs' contractual relationships with such Bluegreen Owners or engaging in other such similar conduct as determined by the Court.

## COUNT V
### Civil Conspiracy to Commit Tortious Interference with Contractual Relations
(against all Defendants)

164.    Bluegreen adopts and realleges paragraphs 1 through 111 and 147-163 above as if fully set forth herein.

165.    This is a cause of action for civil conspiracy arising from Defendants actions, conducted in concert, to tortiously interfere with Bluegreen's contractual relationships with Bluegreen Owners.

166.    Defendants are parties to this civil conspiracy.  Defendants had a common design to interfere with Bluegreen's contractual relationships with Bluegreen Owners, each Defendant

having the intent, and knowledge of the others' intent, to accomplish by concerted action unlawful purposes and/or lawful purposes by unlawful means.

167.    Defendants have committed various overt acts in furtherance of their conspiracy, including but not limited to, wrongfully soliciting Bluegreen Owners through false statements and misrepresentations regarding Defendants' advertised service, sharing and utilizing referral forms to transfer and refer Bluegreen Owners from the TPE Defendants to the Montgomery Law Defendants, soliciting Bluegreen Owners at live presentations that marketed the Montgomery Law Defendants, and by inducing Bluegreen Owners to stop making payments related to their Timeshare Contracts.

168.    Defendants have made agreements to perform separate aspects of this conspiracy, all in concert with each other, and to then divide the fees generated from the scheme among all Defendants.

169.    As a necessary component of facilitating their scheme, Defendants use shell companies as well as various banking and merchant accounts. Defendants' various financial accounts maliciously and purposefully act to hide their misconduct, and to divert and abscond with funds from Bluegreen Owners.

170.    Defendants, acting in concert, have particular effectiveness greater than their individual efforts in that the TPE Defendants (who are not themselves lawyers or a law firm) are able to advertise legal services outside the ethical standards that would otherwise govern the practice of law.  By doing so, the Montgomery Law Defendants use the TPE Defendants to solicit clients in a manner that they themselves would be prohibited, while the TPE Defendants can enjoy the payment of legal fees that they would otherwise never receive.

171.    As a direct and proximate result of Defendants' civil conspiracy, Bluegreen Owners have unlawfully breached their Timeshare Contracts with Bluegreen.

172.    Defendants did not have any justification or privilege in procuring the breach of such Timeshare Contracts. As a direct and proximate result of the foregoing, Bluegreen suffered damages.

173.    Defendants are jointly and severally liable to Plaintiffs for damages.

174.    Defendants acted willfully and with malice in taking these actions.

175.    Defendants' conduct therefore entitles Plaintiffs to an award of punitive damages.

WHEREFORE, Plaintiffs request the Court enter final judgment in their favor and against Defendants, jointly and severally, for actual damages, together with interest thereon, punitive damages, an award of court costs, entry of injunctive relief, and for such other and further relief as the Court deems appropriate

## COUNT VI
### Violations of Florida's Deceptive and Unfair Trade Practices Act
(against all Defendants)

176.    Bluegreen adopts and realleges paragraphs 1 through 111 above as if fully set forth herein.

177.    This is a cause of action for damages and permanent injunctive relief under Section 501.211, Fla. Stat.

178.    Bluegreen is a legitimate business enterprise under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

179.    Bluegreen Owners are consumers for purposes of FDUTPA.

180.    Defendants are engaged in trade or commerce as those terms are defined by FDUTPA.

181.    Defendants are engaged in unconscionable, unfair, and deceptive acts or practices in violation of §501.204(1), Florida Statutes , including:

    i.   luring Bluegreen Owners to purchase illusory services;

    ii.   directly contacting Bluegreen Owners and/or prospective Bluegreen Owners and making false representations regarding Defendants' service;

    iii.   misleading Bluegreen Owners into believing that they will receive a guaranteed legal release from their Timeshare Contract, when in fact Defendants' conduct is designed to cause the unlawful breach of the Timeshare Contract;

    iv.   advertising the ability to "cancel" a Timeshare Contract outside the statutory rescission period;

    v.   offering a 100% guarantee;

    vi.   advertising the ability to obtain a refund of monies paid under the Timeshare Contract;

    vii.   directly and/or indirectly recommending, inducing, or otherwise engaging in conduct and actions which cause Bluegreen Owners to stop making payments related to their Timeshare Contract;

    viii.   directly and/or indirectly misleading Bluegreen Owners to believe that defaulting on their obligations will not affect their credit;

    ix.   directly and/or indirectly falsely claiming that Defendants can fix or prevent damage to Bluegreen Owners' credit;

    x.   directly and/or indirectly causing Bluegreen Owners to default on their payment obligations to Bluegreen;

    xi.  directly and/or indirectly entering Bluegreen Owners into legal services agreement without a proper legal consultation, without any prior contact with the lawyer, and with the majority of legal fees paid to non-lawyers;

    xii.  misleading Bluegreen Owners into believing that they will receive actual legal representation;

    xiii.  violating Rule 4-7.18(a) of the Rules Regulating the Florida Bar by directly soliciting Bluegreen Owners;

    xiv.  violating Rule 4-7.17(b)-(c) of the Rules Regulating the Florida Bar by compensating the TPE Defendants for referrals; and

    xv.  violating Rule 4-5.4(a) of the Rules Regulating the Florida Bar by sharing legal fees with the TPE Defendants.

182.   Section 501.211(1), Fla. Stat., "permits a claim for injunctive relief by 'anyone aggrieved' by an unfair or deceptive act, which has occurred, is now occurring, or is likely to occur in the future." *Bluegreen Vacation Resorts, Inc. v. Timeshare Direct, Inc.*, 123 So.3d 1149, 1152 (Fla. 5th DCA 2012).

183.   Under Section 501.211(1), Fla. Stat., "anyone aggrieved" includes a broader class of complainants than merely consumers; the scope of the injunctive remedy is also greater than the actual damage remedy under § 510.211(2), Fla. Stat. *Id.*; *see also Kinger v. Weekly World News, Inc.*, 747 F. Supp. 1477, 1480 (S.D. Fla. 1990).

184.   Bluegreen is a party aggrieved by Defendants' violation of FDUTPA, Section 501.204(1), Fla. Stat.

185.   As a result of Defendants' actions, Bluegreen has suffered financial losses.

186.    Bluegreen's losses will increase unless Defendants are permanently enjoined from continuing their deceptive and unfair business practices.

187.    Bluegreen is entitled to recover its attorney's fees and costs from Defendants under Sections 501.2105 and 501.211, Fla. Stat.

WHEREFORE, Bluegreen respectfully requests the Court enter injunctive relief against all Defendants, award Bluegreen their costs, including their reasonable attorney's fees, award Bluegreen its actual damages, and for such other and further relief as the Court deems appropriate.

Dated: November 13, 2019.

/s/ Alfred J. Bennington, Jr.
**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**MICHAEL J. QUINN, ESQ.**
Florida Bar No. 084587
mquinn@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile:  (407) 849-7255

and

**DANIEL J. BARSKY, ESQ.**
Florida Bar No. 25713
dbarsky@shutts.com
**SHUTTS & BOWEN LLP**
200 South Biscayne Boulevard, Suite 4100
Miami, Florida 33131
Telephone: (561) 650-8518
Facsimile:  (561) 822-5527
*Attorneys for Plaintiffs*