## UNITED STATES DISTRICT COURT OF
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:19-cv-24704-JEM

BLUEGREEN VACATION UNLIMITED,
INC., a Florida corporation; and
BLUEGREEN VACATIONS CORPORATION,
a Florida corporation,

                Plaintiffs,

v.

THE MONTGOMERY LAW FIRM, LLC, a
Missouri limited liability company;
MONTGOMERY & NEWCOMB, LLC, a
Missouri limited liability company; M. SCOTT
MONTGOMERY, an individual; W. TODD
NEWCOMB, an individual; PRINCIPAL
TRANSFER GROUP, LLC, a Missouri limited
liability company; CLS, INC. d/b/a ATLAS
VACATION REMEDIES and also d/b/a
PRINCIPAL TRANSFER GROUP, a Missouri
corporation; JASON LEVI HEMINGWAY, an
individual; and SQUARE ONE
DEVELOPMENT GROUP, INC.

                Defendants.

_____

## LAWYER DEFENDANTS' AMENDED COUNTERCLAIM

Defendants, THE MONTGOMERY LAW FIRM, LLC ("Montgomery Law")
MONTGOMERY & NEWCOMB ("M&N Law"), M. SCOTT MONTGOMERY
("Montgomery"), and W. TODD NEWCOMB ("Newcomb") (cumulatively, the "Lawyer
Defendants"), hereby file their Amended Counterclaim against BLUEGREEN VACATION
UNLIMITED, INC. and BLUEGREEN VACATIONS CORPORATION (together, the
"Bluegreen Defendants") pursuant to Rule 15(a)(1), Fed. R. Civ. P.

### The Parties

1.      M&N Law is a Missouri limited liability company, whose principal place of business is located at 435 E. Walnut Street, Springfield, MO 65806.

2.      M&N Law is owned and managed by Montgomery and Newcomb.

3.      M&N Law is in the business of providing legal services to clients, including those desiring to change their relationship with Bluegreen Defendants. M&N Law primarily provides legal services primarily through attorneys M. Scott Montgomery and W. Todd Newcomb, who are licensed to practice law in Missouri.

4.      Bluegreen Defendants are in the business of developing, selling, and managing timeshare interests. Bluegreen Defendants' fraudulent, high-pitched sales tactics are the most distinctive element of its business model.

### Timeshare Interests

5.      In order to offer timeshare interests, Bluegreen Defendants develop commercial real estate designed for people to spend holidays.

6.      In their attempt to maximize profit from this real estate, Bluegreen Defendants offer consumers an opportunity to "own" certain times at a particular piece of real estate. Thus, timeshare companies such as Bluegreen Defendants divide occupancy of a particular piece of real property, such as a specific room, into time-based intervals. The timeshare companies then sell these intervals, with the purchaser owning a time-based interval for real property in common with many other persons, sometimes hundreds or even thousands of people.

7.      The timeshare itself is an agreement or arrangement in which parties share the ownership of or right to use property. These timeshares usually consist of one-week intervals. For example, a typical timeshare interest for Week 20 in Unit 1701 would permit the owner the right of sole occupancy during Week 20 in Unit 1701, but only Week 20. Staggering annual, quarterly,

or monthly maintenance fees usually accompany this obligation and can increase without the input of the owners. There are also vacation clubs and points programs, involving timeshares across multiple properties.

8.      Not all timeshares are for fixed weeks. Sometimes the interest is for a "floating" week that can be assigned to a particular week in the year. This particularly grieves timeshare interest owners because the most popular weeks are frequently unavailable or book quickly, leading to a timeshare interest worth much less than the purchaser had originally considered.

9.      Bluegreen Defendants' timeshare interests are not real estate in a traditional sense, but they are often governed by and subject to the same documents and laws that apply to real estate. Deeds are not often used anymore, because grantees can escape deeds by using them to give an interest back to a grantor. But mortgages, promissory notes, contracts for sale and purchase, doc stamps, and closings are hallmarks of Bluegreen Defendants' sales of timeshare interests.

10.     Bluegreen Defendants sell their timeshare interests to the public for many thousands of dollars, sometimes upwards of hundreds of thousands of dollars. If a consumer does not use their interest in a given year, then the effect is pure economic waste for the consumer. Bluegreen Defendants attempt to trap consumers into allegedly valid contractual relationships, requiring these consumers to pay off absurdly-priced timeshare interests and to be subject to oppressive, ever-increasing maintenance fees for the rest of their natural lives.

11.     In arriving at its pricing for timeshare interests, Bluegreen Defendants aggressively price the interests to charge whatever the market can bear without regards to actual work, labor, and sometimes, even the initial construction or development cost. Market pricing is, however, affected by time of the year, as this is correlated to demand for the timeshare.

12.     Consumers who try to sell their timeshare interests discover that their timeshare interests are worth dramatically less, usually almost nothing.

13.     But even Florida Statutes have codified the relative worthlessness of timeshare interests hawked by companies like Bluegreen Defendants on the unwary public. §192.037, Fla. Stat., addresses the valuation of timeshares for *ad valorem* property tax purposes. §192.037(10), Fla. Stat., first requires appraisers to consider the resale market when arriving at pricing for timeshares. But, according to §192.037(11), Fla. Stat., "[i]f there is an inadequate number of resales to provide a basis for arriving at value conclusions," then property appraisers shall discount the original purchase price in half.

14.     In fact, consumer resale values are far, far less than half of the original purchase price in virtually all cases. For most, the resale value is somewhere between $0 and $100. But for many, the *actual* value of these timeshare interests is negative due to maintenance fees.

## The Timeshare Industry

15.     There is no other comparable industry that permits a product to be sold at such outrageous prices, only to have such a product be essentially worthless. Imagine purchasing a new Ford F-150 truck for $40,000.00 on August 1 of a year, then only being able to sell it for $1 on August 15. In the old vernacular, we would call that car a "lemon."

16.     Truly, the timeshare interest industry is America's last legal fraud.

17.     But it is a *lucrative* fraud. From 2016 to 2019, Bluegreen Defendants' revenues increased each year from approximately $571 million in 2016 to $652 million in 2019.

18.     Earnings, however, went down, from about $170 million in 2016 to $116 million in 2019. This is a precipitous and unhealthy drop.

19.     Bluegreen Defendants decided to pursue litigation against the Lawyer Defendants, including M&N Law among others, in a strategic move to stop the bleeding.

20.     Bluegreen Defendants have coordinated their litigation strategy in this case, and other cases, by featuring the same legal counsel, coordinating through the American Resort Development Association ("ARDA"), and otherwise coordinating marketing, pricing, and litigation strategies so as to increase their collusive pricing power and decrease consumer power.

21.     Bluegreen Defendants' anticompetition strategy hinges on decreasing consumer bargaining power. It is absolutely vital to Bluegreen Defendants that, once consumers have signed a contract with them, Bluegreen Defendants not provide any possibility of escape for those consumers, no matter how dire the consumers' need or the legality of the consumers' desired method of escape.

**Bluegreen Defendants' Antagonism to M&N Law**

22.     Recently, M&N Law obtained the certification of a class in a class action lawsuit against Bluegreen Vacations Unlimited, Inc. on August 31, 2020. See: Attached Order as Exhibit 1. It appears that Bluegreen Defendants did not act quickly enough to illegally deter the lawful, much-needed legal services offered by M&N Law.

23.     M&N Law has been sued by Bluegreen Defendants in this lawsuit. It has also been sued by competitors of Bluegreen Defendants, namely Wyndham Vacation Ownership and its related entities, in the Middle District of Florida Case No. 8:19-cv-1895 ("Middle District Case").

24.     Bluegreen Defendants know that M. Scott Montgomery and W. Todd Newcomb are lawyers who work at M&N Law. They were aware of this prior to instigating their lawsuit in this case against M&N Law.

25.     Bluegreen Defendants know that M. Scott Montgomery and W. Todd Newcomb are owners of M&N Law. They were aware of this prior to instigating their lawsuit in this case against M&N Law.

26.     M. Scott Montgomery and W. Todd Newcomb are lawyers who are admitted to practice law in the State of Missouri.

27.     Bluegreen Defendants know that M. Scott Montgomery and W. Todd Newcomb are lawyers who are admitted to practice law in the State of Missouri.

28.     Bluegreen Defendants know that some persons who have contractual relationships with Bluegreen Defendants for timeshare interests believe that they have a lawyer-client relationship with M&N Law or M. Scott Montgomery or W. Todd Newcomb or all of them.

29.     Many persons who have contractual relationships with Bluegreen Defendants, i.e. so-called Bluegreen Owners, are represented by M&N Law or its lawyers.

**Count I – Declaratory Judgment against
Bluegreen Defendants regarding Litigation Privilege**

30.     M&N Law restates paragraph nos. 1 through 29 of the Counterclaim.

31.     M&N Law has been sued by Bluegreen Defendants in this lawsuit. It has also been sued by competitors of Bluegreen Defendants, namely Wyndham Vacation Ownership and its related entities, in the Middle District Case.

32.     In paragraph no. 12 of their Complaint in this case [DE 1], Bluegreen Defendants claim that M&N Law instructs, deceives, induces, or persuades its clients to stop fulfilling their contractual obligations to Bluegreen Defendants "as a means of facilitating the 'exit' or 'cancellation.'"

33.     Bluegreen Defendants knew or should have known prior to filing their Complaint [DE 1] that the allegation contained in paragraph no. 12 was false as applied to M&N Law.

34.    In paragraph no. 13 of their Complaint [DE 1], Bluegreen Defendants implicitly concede this by noting that their false allegation will still be true even if written proof shows it to be false.

35.    But Bluegreen Defendants are also aware that several clients of M&N Law have obtained favorable results as a result of their representation by M&N Law and its lawyers, M. Scott Montgomery and W. Todd Newcomb.

36.    M&N Law, primarily through its lawyers, M. Scott Montgomery and W. Todd Newcomb, offers legal advice to its clients and does so with good faith and honest beliefs that its advice is legal, proper, and in the clients' best interests.

37.    M&N Law, primarily through its lawyers, M. Scott Montgomery and W. Todd Newcomb, usually base their legal advice on the facts presented to them by their clients or their clients' agents.

38.    M&N Law and Bluegreen Defendants have many actual controversies between them relating to timeshares.

39.    Many clients of M&N Law honestly believe that Bluegreen Defendants have breached their contractual obligations to them.

40.    Many clients of M&N Law honestly believe that Bluegreen Defendants fraudulently induced them to enter into contractual relationships with them.

41.    M&N Law believes that clients whose contractual relationships have been materially breached by Bluegreen Defendants are entitled to breach those contractual relationships themselves.

42.    Further, M&N Law also believes that if a Bluegreen Defendant sues one of its clients for a breach of contract and that Bluegreen Defendant has committed a prior material breach

of the contract, that under Florida law, M&N Law's client should be permitted to raise prior breach as an affirmative defense.

43.     Similarly, M&N Law believes that its clients who were fraudulently induced to enter contractual relationships with Bluegreen Defendants are entitled to breach those contractual relationships—and to use such fraudulent inducement as an affirmative defense when sued for breach of contract by a Bluegreen Defendant.

44.     Bluegreen Defendants do not believe that M&N Law's clients are entitled to breach their contractual relationships with Bluegreen Defendants even if Bluegreen Defendants materially breach their contractual relationships with M&N Law's clients or if M&N Law's clients were fraudulently induced into their contractual relationships with Bluegreen Defendants.

45.     Bluegreen Defendants also do not believe that M&N Law's clients are entitled to raise an affirmative defense of prior breach even when Bluegreen Defendants committed a material breach first or fraudulent inducement to a breach of contract claim even when those clients were fraudulently induced into the contractual relationship.

46.     M&N Law has hundreds of clients who desire terminating their legal and contractual relationships with Bluegreen Defendants.[1] Thus, this is one of the many actual controversies that M&N Law has with Bluegreen Defendants because Bluegreen Defendants do not want those relationships terminated.

47.     M&N Law is entitled to rely on their clients' versions of the facts in determining the proper pleadings and motions it files on behalf of its clients.

---

[1] Although in the Missouri case wherein M&N Law recently obtained a class certification, there will have *thousands* of class members.

48.     Bluegreen Defendants also do not believe that M&N Law should be entitled to rely on M&N Law's clients' honest or good faith understanding of facts when those clients earnestly desire terminating their contractual relationship with a Bluegreen Defendant.

49.     As a result of the foregoing controversy, M&N Law seeks a declaratory judgment from this Court pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that:

(a)     M&N Law may assert an affirmative defense of prior breach on behalf of its clients in lawsuits brought by a Bluegreen Defendant against M&N Law clients for breach of contract when M&N Law's clients have an honest, good faith belief that a Bluegreen Defendant breached the applicable contract first;

(b)     M&N Law may assert an affirmative defense of fraudulent inducement on behalf of its clients in lawsuits brought by a Bluegreen Defendant against M&N Law clients for breach of contract when M&N Law's clients have an honest, good faith belief that a Bluegreen Defendant fraudulently induced the M&N Law client into the contractual relationship; and

(c)     M&N Law providing advice to its clients that they may legally breach their contracts with Bluegreen Defendants when their clients believe they were fraudulently induced into those contracts or that Bluegreen Defendants breached the contracts first is reasonable, honest, good faith advice that would be a valid justification such that Bluegreen Defendants may not prevail in a tortious interference claim of any type against M&N Law for those clients; and

(d)     For any such Bluegreen Owners who are clients of M&N Law, M&N Law
shall be immunized from lawsuit by Bluegreen Defendants for tortious
interference of any type or M&N Law shall prevail against Bluegreen
Defendants on any such claim.

**WHEREFORE**, M&N Law respectfully requests that this Court issue a declaratory
judgment in M&N Law's favor as to the grounds asserted in paragraph 49, *supra*.

### Count II – Declaratory Judgment against
### Bluegreen Defendants regarding Fraudulent or Deceptive Practices

50.     M&N Law restates paragraph nos. 1 through 29 of the Counterclaim.

51.     The contractual relationships of M&N Law's clients with Bluegreen Defendants all
involve M&N Law clients purchasing timeshare interests from Bluegreen Defendants.

52.     In the vast majority of cases, M&N Law's clients are unable to sell those timeshare
interests either without Bluegreen Defendants' approval or for pennies on the dollar or both.

53.     Recently, timeshare developers have been exposed for selling timeshare interests
that are either virtually worthless or actually worthless on the re-sale market or which have a
negative value for the person who purchases those interests.

54.     In an expert report by Steven L. Marshall, a Florida-Certified General Real Estate
Appraiser, dated August 26, 2019, Marshall found that in Osceola County between 78.37% and
86.58% of timeshare interests were resold for between $0 and $100 in 2015 and 2016. *See: Expert
Report*, attached as Exhibit 4, page 38.

55.     And yet the median sales price for a timeshare developer, such as a Bluegreen or a
Wyndham, was between $22,990 and $27,155. *See:* Exhibit D, page 36.

56.     Bluegreen Defendants' timeshares are similarly worthless on resale markets.

57.     Bluegreen Defendants' timeshares are worthless in the hands of their purchases regardless of the amount of time between Bluegreen Defendants' original sale of the timeshare and the attempted or consummated re-sale.

58.     Bluegreen Defendants are aware of the certain precipitous drop in value that timeshares and timeshare interests have after their conveyance from Bluegreen Defendants. However, Bluegreen Defendants do not inform purchasers of this certainty, which constitutes a defect in the timeshare itself.

59.     Regardless, it is inequitable for Bluegreen Defendants to not disclose this knowledge to a purchaser because Bluegreen Defendants are in a far better position to possess the knowledge and it would be costless to convey the knowledge to a potential purchaser.

60.     §501.204(1), Fla. Stat., makes "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful. This statute is the critical linchpin of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), §501.201, Fla. Stat., *et seq*.

61.     M&N Law believes that Bluegreen Defendants' failure to disclose the certain diminution of Bluegreen Defendants' timeshare interests after their conveyance to Bluegreen Owners, as defined in Bluegreen Defendants' Complaint, is a *per se* unconscionable practice, a *per se* unfair act, and a *per se* deceptive practice under FDUTPA.

62.     Bluegreen Defendants do not believe such a disclosure is necessary or legally required and, in any event, does not believe that a failure to disclose the timeshare interests they sell to Bluegreen Owners shall certainly decrease in value to almost $0 is a *per se* unconscionable practice, a *per se* unfair act, or a *per se* deceptive practice under FDUTPA.

63.     Many Bluegreen Owners are clients of M&N Law.

64.     Bluegreen Owners who are clients of M&N Law believe that Bluegreen Defendants have committed a deceptive practice in failing to properly disclose that the value of the fair market value of the timeshare interest they purchased from Bluegreen Defendants is $0, almost $0, or actually negative in value.

65.     M&N Law is being sued under false pretenses in the underlying Complaint as means for preventing M&N Law from serving its clients who are also Bluegreen Owners.

66.     M&N Law and Bluegreen Defendants have an actual controversy over whether or not Bluegreen Defendants' failure to disclose the certain diminution in value is a *per se* FDUTPA violation.

**WHEREFORE**, M&N Law respectfully requests that this Court issue a declaratory judgment in M&N Law's favor (1) finding that Bluegreen Defendants' sales of timeshare interests without a proper disclosure regarding the certain diminution of value of the timeshare interest in the hands of a Bluegreen Owner is a *per se* violation of FDUTPA; (2) any Bluegreen Owner client of M&N Law has a right to breach their contract to purchase their timeshare interest based on this *per se* violation of FDUTPA; (3) M&N Law has an honest, good faith basis to counsel its Bluegreen Owner clients who did not receive a proper disclosure regarding the certain diminution of value of the timeshare interest that the Bluegreen Owner client may legally breach their contract with Bluegreen Defendants; (4) instructing Bluegreen Defendants to develop and issue a remedial disclosure to all Bluegreen Owners as well as a disclosure for prospective Bluegreen Owners; and (5) issuing any other relief necessary, including injunctive relief, to vindicate the rights and responsibilities announced in the judgment.

### Count III – Violation of the Clayton Act: Anticompetitive Litigation

67.     M&N Law restates paragraph nos. 1 through 29 of the Counterclaim.

68.     M&N Law brings Count III as a private cause of action under the Clayton Act, specifically 15 U.S.C. §15(a), which states in relevant part that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States...."

69.     M&N Law is not just being sued by Bluegreen Defendants. It is also being sued by Wyndham Vacation Ownership and its related entities (cumulatively, "Wyndham") in the Middle District Case.

70.     In both causes of action, M&N Law is being sued based on false pretenses, namely, that its lawyers "instruct, deceive, induce, or persuade" timeshare interest owners "to stop fulfilling their contractual obligations under [timeshare contracts], as a means of facilitating the 'exit' or 'cancellation.'" *See:* [D.E. 1, para. 12]. In the Middle District Case, the same allegation is made. This is paragraph 13 of the Complaint in the Middle District Case:

> 13.     Upon being retained, Defendants instruct, deceive, induce, or persuade Wyndham Owners to stop fulfilling their contractual obligations under the Timeshare Contracts, as a means of facilitating the "exit", "cancellation", or "transfer." Even if they state otherwise in writing, Defendants instruct, deceive, induce, or persuade Wyndham Owners to stop making payments under the Timeshare Contracts. There are three purposes to doing this:
>
> > a.     it helps Defendants justify their fees by claiming that the Wyndham Owner is saving money by not making payments to Wyndham as required by the Timeshare Contracts;
> >
> > b.     related to paragraph 13(a), *supra*, it diverts the funds of the Timeshare Owners from Wyndham to Defendants, causing Wyndham damages; and
> >
> > c.     it ensures a Wyndham Owner will go into default, and foreclosure, on their Timeshare Contract, allowing Defendants to claim success at

As the Court will notice, the Middle District Case allegation combines paragraphs 12 and 13 of the instant Complaint. The Middle District Case Complaint is attached to this Counterclaim as Exhibit 2.

71.     In both cases, Bluegreen Defendants and Wyndham sue M&N Law for Contributory False Advertising under the Lanham Act, Tortious Interference with Contractual Relations, Civil Conspiracy to Commit Tortious Interference with Contractual Relations, and violations of FDUTPA.

72.     Bluegreen Defendants and Wyndham are competitors. As recently as 2017, Wyndham was described as having a 17.40% market share for timeshares.[2] The top three competitors in this space combine to have a 44.57% market share.[3] While Bluegreen Defendants are not a top three competitor, it is considered one of the market leaders, along with Wyndham, Marriott Vacations Worldwide, Hilton Grand Vacations, Diamond Resorts, and Disney Vacation Club, and Westgate Resorts.[4]

73.     The timeshare industry has a relatively high concentration on the Herfindahl-Hirschman Index.

74.     Both Bluegreen Defendants and Wyndham share the same counsel in their lawsuits against M&N Law.

---

[2]     https://www.marketwatch.com/press-release/vacation-ownership-timeshare-market-report-2020-2026-competitive-analysis-proposal-strategy-top-addressable-targets-key-requirements-wyndham-marriott-vacations-worldwide-hilton-grand-vacations-2020-07-31
[3] *Id.*
[4]     https://www.prnewswire.com/in/news-releases/global-vacation-ownership-timeshare-market-2019-analysis-by-key-company-type-regions-opportunities-and-forecast-2023-report-by-reportsnreports-812339755.html

75.     Bluegreen Defendants and Wyndham, especially Wyndham, have pursued aggressive litigation strategies against any lawyer or non-lawyer entity that assists persons seek releases from their obligations to Bluegreen Defendants and/or Wyndham, respectively.

76.     These aggressive litigation strategies are entirely predicated upon false pretenses, namely, that defendants like M&N Law are encouraging their clients to stop paying their obligations to companies like Bluegreen Defendants, and without any honest, good faith belief about the advice being in the clients' interests.

77.     In fact, clients seek out and are desperate for the help of M&N Law.

78.     The reason why Bluegreen Defendants has filed this lawsuit is that it is a part of Bluegreen Defendants' conscious efforts to decrease competition in the timeshare industry.

79.     This case, and the identical litigation being promulgated by Wyndham against M&N Law and many other defendants in federal courts around Florida and, upon information and belief, around the country, is solely the result of a concerted strategy on the part of Bluegreen Defendants along with its competitors to decrease competitive pressures in the timeshare industry. An example and quite non-exhaustive list of the anticompetitive litigation is attached as Exhibit 3.

80.     Bluegreen Defendants' lawsuit in this case is an example. This case represents an attempt to put M&N Law out of business, at least insofar as Bluegreen Owners are concerned, without regard to the legitimate services M&N Law provides. To the contrary, Bluegreen Defendants' sole intention is to reduce its need to cater to the Bluegreen Owners, to manage its contractual relationships legally, and to give it more pricing power.

81.     Because the timeshare market is already so consolidated, Bluegreen Defendants already has very significant pricing power. But by eliminating M&N Law from helping Bluegreen

Owners, Bluegreen Defendants will augment its pricing power and decrease competition in the timeshare market.

82.     Upon information and belief, Bluegreen Defendants contributes to and is a member of ARDA. Several members of ARDA have explicitly communicated with each other and agreed to pursue these cases so as to decrease competition among them and raise all of their pricing power on timeshares.

83     Thus, the agreements and actions taken by Bluegreen Defendants, in concert with its competitors, is a combination in the form of trust or conspiracy in restraint of trade prohibited by 15 U.S.C. §1. Additionally, the lawsuits themselves promulgated by Bluegreen Defendants against timeshare exit entities and attorneys, including the underlying Complaint in this case, are a restraint of trade or commerce prohibited by 15 U.S.C. §1.

84.     Bluegreen Defendants' violations described in paragraph 83, *supra*, are violations of antitrust laws described in 15 U.S.C. §15(a).

85.     M&N Law has been directly harmed by Bluegreen Defendants' anticompetitive actions because it has had to incur exorbitant legal fees, is uncertain about its ability to continue providing legal services in Missouri, is uncertain about being able to continue helping timeshare interest owners, has suffered reputational harm and injury, and has received fewer clients. Additionally, M&N Law has had existing errors and omissions insurance policies canceled and prospective policies have had dramatically raised premiums. This is a direct harm as a result of Bluegreen Defendants' anticompetitive conduct.

86.     M&N Law is also entitled to injunctive relief against Bluegreen Defendants for their current lawsuit in this case, as well as against any other timeshare companies asserting the

same causes of action (such as Wyndham in the Middle District Case) due to the companies' violation of antitrust laws under 15 U.S.C. §26.

87.     The public interest would be served by injunctive relief because M&N Law offers a much-needed service to members of the public, they are lawful members of the Missouri Bar, and their ability to represent clients without unfair hindrance and litigation should be protected.

**WHEREFORE**, M&N Law requests that this Court find that M&N Law has been damaged as a result of Bluegreen Defendants' violations of antitrust laws per 15 U.S.C. §15(a), and award a judgment of damages in M&N Law's favor consisting of threefold damages sustained by M&N Law, which continue to accrue as of this date, the cost of the counterclaim, other reasonable attorney fees, and, upon motion, simple interest on actual damages per 15 U.S.C. §15(a). M&N Law also requests that this Court award injunctive relief under 15 U.S.C. §26 by staying the underlying litigation against M&N Law in this case, and applying a nationwide temporary restraining order against all timeshare companies from pursuing M&N Law in similar litigation until this Count III can be resolved. M&N Law also requests any other relief that this Court deems just and proper.

### Count IV – Declaratory Judgment against
### Bluegreen Defendants regarding Anticompetitive Securitization

88.     M&N Law restates paragraph nos. 1 through 29, 72 through 75, and 82 of the Counterclaim.

89.     Bluegreen Defendants, but particularly Bluegreen Vacations Corporation ("BVC"), have competitive strategies that depend crucially on the profits obtained by financing timeshare purchases to Bluegreen Owners.

90.     On or around October 15, 2020, BVC completed a private offering and sale of approximately $131 million in timeshare financing-backed securities.[5]

91.     A timeshare financing-backed security is a type of mortgage-backed security. Mortgage-backed securities "are debt obligations that represent claims to the cash flows from pools of mortgage loans, most commonly on residential property."[6] Instead of pools of mortgage loans, BVC and companies like it pool timeshare financing arrangements.

92.     All of the leaders in the timeshare industry issue such securities. On or around August 13, 2020, Wyndham issued about $575 million in said securities.[7] On or around July 15, 2020, Westgate issued about $275 million of them.[8]

93.     Investors purchase the securities and receive payments later on based on the coupon rate, which is bid upon competitively.

94.     BVC, like its competitors in this oligopolistic market, uses the funds it receives from these offerings to pay down debt as well as various operating and corporate expenses.

95.     The value of these securities depends crucially on risk. The greater the risk, the higher the coupon rate. The lesser the risk, the lower the coupon rate. Thus, the Wyndham Class A note at a coupon of 1.33% signifies it is less risky and based on a more dependable revenue stream than either the Bluegreen Class A note at a coupon of 1.55% or the Westgate Class A note

---

[5]          https://www.businesswire.com/news/home/20201015006046/en/Bluegreen-Vacations-Corporation-Completes-131-Million-Securitization-of-Vacation-Ownership-Receivables [Accessed: October 21, 2020]

[6] https://www.sec.gov/fast-answers/answersmortgagesecuritieshtm.html [Accessed: October 21, 2020]

[7]          https://www.prnewswire.com/news-releases/wyndham-destinations-completes-575-million-term-securitization-301112142.html [Accessed: October 21, 2020]

[8]          https://www.prnewswire.com/news-releases/westgate-resorts-completes-securitization-of-275m-in-timeshare-loans-301094032.html [Accessed: October 21, 2020]

with its coupon of 2.713%. This is similar in concept to how property tax certificates are bid down by property appraisers across Florida.

96.     When one timeshare interest owner defaults on her or his payments under a financing agreement with BVC, this does not present a major problem for BVC. But when one hundred timeshare interest owners default, or a thousand, it gets in the way of BVC's ability to offer less risky securities. This, in turn, interferes with BVC's ability to finance its operations, pay down its debt, and compete.

97.     As a result of the agreement between Bluegreen Defendants, its competitors, and ARDA, or at the very least their illegal collusion, lawsuits featuring the same baseless causes of action without any good faith evidentiary basis prior to initiating the litigation have been filed against M&N Law and many other persons or entities who help timeshare interest owners get financial relief from alleged timeshare obligations.

98.     Bluegreen Defendants' design, and that of their competitors, is anticompetitive. They desire that their litigation decrease the riskiness of the securities they offer and thereby decrease the amount they have to pay investors back in the future based on the coupon.

99.     As a result of Bluegreen Defendants' design, and that of their competitors, investors pay more up front for the timeshare financing-backed securities and also receive less back than they would have if there had been true competition in the securities offerings.

100.    M&N Law believes that Bluegreen Defendants' litigation against it, as well as the litigation from industry leader Wyndham, is anticompetitive and a violation of the Clayton Act because it runs afoul of antitrust laws due to the harm it creates to investors.

101.    Bluegreen Defendants do not believe that its litigation against M&N Law is anticompetitive or that its litigation runs afoul of antitrust laws and it does not believe that its concerted litigation strategy has harmed any investors.

102.    As a result of the foregoing controversy, M&N Law seeks a declaratory judgment from this Court pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Bluegreen Defendants' lawsuit against M&N Law in the underlying claim here is anticompetitive because of the harm it creates to investors in its timeshare financing-backed securities.

**WHEREFORE**, M&N Law respectfully requests that this Court issue a declaratory judgment in M&N Law's favor finding that (1) Bluegreen Defendants' lawsuit against M&N Law in the underlying claim [DE 1] is anticompetitive because of the harm it creates to investors in its timeshare financing-backed securities; (2) Bluegreen Defendants' lawsuit should be enjoined and/or dismissed immediately due to its anticompetitive nature; (3) any other anticompetitive lawsuit against M&N Law be enjoined and/or dismissed immediately due to its anticompetitive nature; and (4) any other relief, including injunctive relief, necessary to vindicate the rights and responsibilities otherwise declared in this judgment.


### ATTORNEY FEES DEMAND

Lawyer Defendants are entitled to their attorney fees and costs necessary in defending all actions brought by Bluegreen Defendants and in prosecution of their claims against Bluegreen Defendants.

## JURY TRIAL DEMAND

Under Fed. R. Civ. P. 38(b), Lawyer Defendants demand a jury trial on all issues of fact so triable in the claims brought by Bluegreen Defendants in their Complaint [DE 1] and M&N Law does so as regards all counts so triable in the Counterclaim.

Dated: November 29, 2020.

Respectfully submitted,

/s/ Christian W. Waugh
Christian W. Waugh, B.C.S. [FBN 71093]
*Board Certified Real Estate Attorney*
Morgan Fayocavitz [FBN 1015835]
WAUGH LAW, P.A.
321 N. Crystal Lake Drive, Ste. 207
Orlando, FL 32803
Email: cwaugh@waughpa.com
Email: mfayocavitz@waughpa.com
Email: rwood@waughpa.com
Telephone:  321-800-6008
Fax:   844-206-0245

*Counsel for Lawyer Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and that counsel for Bluegreen Defendants.

/s/ Christian W. Waugh
Christian W. Waugh