UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-24704-CIV-MARTINEZ/AOR

BLUEGREEN VACATION UNLIMITED, INC., and
BLUEGREEN VACATIONS CORPORATION,

    Plaintiffs,

v.

MONTGOMERY & NEWCOMB, LLC, *et al*,

    Defendants.
_____/

MONTGOMERY & NEWCOMB, LLC,

    Counter-Plaintiff,

v.

BLUEGREEN VACATION UNLIMITED, INC., and
BLUEGREEN VACATIONS CORPORATION,

    Counter-Defendants.
_____/

### REPORT AND RECOMMENDATION

    THIS CAUSE came before the Court upon Defendant Montgomery & Newcomb LLC's (hereafter, "Defendant/Counter-Plaintiff" or "M&N Law") Motion for Preliminary Injunction as to Plaintiffs' Sham Litigation (hereafter, "Motion for Preliminary Injunction") [D.E. 114]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Jose E. Martinez, United States District Judge [D.E. 124]. The undersigned held an evidentiary hearing on this matter on August 26, 2021 (hereafter, "Evidentiary Hearing") [D.E. 139]. Having fully considered the evidence and the argument of counsel presented at the Evidentiary Hearing, and having thoroughly reviewed the parties' written submissions, the undersigned respectfully recommends that Defendant/Counter-Plaintiff's Motion for Preliminary Injunction be DENIED.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs Bluegreen Vacation Unlimited, Inc. and Bluegreen Vacations Corporation (together, "Plaintiffs" or "Bluegreen Companies") commenced this action against M&N Law and other Defendants on November 13, 2019.  See Complaint for Damages and Injunctive Relief (hereafter, "Complaint") [D.E.1].[1]  In their Complaint, Bluegreen Companies allege that M&N Law and the other Defendants engaged in a scheme to interfere with Bluegreen Companies' timeshare business by falsely advertising to Bluegreen timeshare owners: "the ability to legally release or 'cancel' the Bluegreen Owners from the[ir] Timeshare Contracts"; and "guarantee[ing] that Bluegreen Owners will be legally and permanently exited from their Timeshare Contracts if they use Defendants' services."  See Complaint [D.E. 1 at 2–3].  According to Bluegreen Companies, the alleged scheme worked as follows:

> The scheme consists of a conspiracy among the defendants to lure timeshare owners into breaching their timeshare contracts [with Bluegreen].  Once an Owner is lured in by the false advertising, [Defendants Square One, PTG, Mr. Hemingway, and CLS (collectively, "Third Party Exit Defendants" or "TPE Defendants")] charge the Owner an "exorbitant up-front fee" and assign the Owner to [Defendants M&N Law, The Montgomery Law Firm, LLC, Mr. Montgomery, and Mr. Newcomb (collectively, "the Lawyer Defendants")].  [The Lawyer Defendants] receive a referral fee from the TPE [D]efendants, but do little for their "clients," other than sending a form demand letter to Bluegreen seeking release from the contracts.  Meanwhile, the TPE Defendants (with M&N [Law's] knowledge) convince the Owners not to pay the fees they owe under their Bluegreen contracts to facilitate the "exit."  When the Owners eventually default, which often ruins the Owners' credit, [D]efendants claim they have successfully secured the "exit" from the Owners' timeshares. The scheme harms the Owners and causes Bluegreen significant loses.

---

[1] The other Defendants are: The Montgomery Law Firm, LLC; M. Scott Montgomery, Esq. ("Mr. Montgomery"); W. Todd Newcomb, Esq. ("Mr. Newcomb"); Principal Transfer Group, LLC ("PTG"); Jason Levi Hemingway ("Mr. Hemingway"); CLS Inc. ("CLS") d/b/a Atlas Vacation Remedies and also d/b/a Principal Transfer Group; and Square One Development Group, Inc ("Square One").  See Complaint [D.E. 1].

See Response in Opposition to Motion for Preliminary Injunction (hereafter, "Response") [D.E. 115 at 3–4] (citations omitted).

In their Complaint, Bluegreen Companies assert the following claims against M&N Law:

- Count III - Contributory False Advertising in Violation of the Lanham Act, 15 U.S.C. §1125(a)(1).
- Count IV - Tortious Interference with Contractual Relations.
- Count V - Civil Conspiracy to Commit Tortious Interference with Contractual Relations.
- Count VI - Violations of Florida's Deceptive and Unfair Trade Practices Act.

See Complaint [D.E. 1 at 29–39]. As relief, Bluegreen Companies request an award of damages and, *inter alia*, "an injunction upon such terms as the Court may deem reasonable, to prevent further contributory violations by the Defendants of 15 U.S.C. 1125(a)." See Complaint [D.E. 1 at 30].

On October 22, 2020, M&N Law filed its Counterclaim against Bluegreen Companies, which was amended on November 29, 2020 (hereafter, "Amended Counterclaim") [D.E. 68]. In the Amended Counterclaim, M&N Law alleges that Bluegreen Companies' causes of action are: "entirely predicated upon false pretenses namely, that defendants like M&N Law are encouraging their clients to stop paying their obligations to companies like Bluegreen Defendants, and without any honest, good faith belief about the advice being in the clients' interests"; "an attempt to put M&N Law out of business"; and part of Bluegreen Companies' "conscious efforts to decrease competition in the timeshare industry[,]" "reduce its need to care to the Bluegreen Owners[,]" and "augment [their] pricing power . . . ." See Am. Counterclaim [D.E. 68 at 12–17].

In Count III of its Amended Counterclaim, M&N Law asserts a claim against Bluegreen Companies pursuant to the Clayton Act, 15 U.S.C. §15(a), for alleged violations of the Sherman Act, 15 U.S.C. §1. Id. at 12–17. In its Motion for Preliminary Injunction, M&N Law requests: "a

nationwide injunction [pursuant to 15 U.S.C. § 26] precluding Plaintiffs . . . from initiating any further lawsuit against M&N Law and its attorneys, in federal or state court, based on their provision of legal services to timeshare owners, until this Court resolves Count III of M&N Law's Counterclaim"; and "a stay as to Plaintiffs' claims against M&N Law and its attorneys, pending resolution of Count III of the Counterclaim." See Motion for Preliminary Injunction [D.E. 114 at 3].[2]

### EVIDENTIARY HEARING

The following witnesses testified at the Evidentiary Hearing: Martha Farrell ("Ms. Farrell"); Sherry Peterson ("Ms. Peterson"); Peggy Irene Parker née Steckert ("Ms. Parker"); Mr. Montgomery; Mr. Newcomb; Mr. Hemingway; and John Hunt ("Mr. Hunt"). See Exhibit and Witness List [D.E. 140]. The undersigned found the testimony of each of these witnesses, except for Mr. Hemingway, to be credible and accepts such testimony as reliable. The undersigned found Mr. Hemingway's testimony to be contrived and self-serving and assigns little weight to it.

The following exhibits were admitted at the Evidentiary Hearing: Plaintiffs Exhibit 1; and Defendant/Counter-Plaintiff Exhibits 4 & 5. Id.

**A. Ms. Farrell's Testimony:**

1. Ms. Farrell is a Bluegreen timeshare owner.

2. Ms. Farrell was referred to the Lawyer Defendants in August of 2019 because she was unsuccessful in her attempts to have Bluegreen buy back her timeshare.

3. Ms. Farrell ultimately retained the Lawyer Defendants and paid them $3,000 to assist her with the matter.

---

[2] 15 U.S.C. § 26 provides: "Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws . . . ." Id.

4. Ms. Farrell was not current on her payments to Bluegreen at the time she retained the Lawyer Defendants because she could no longer afford those payments.

5. The Lawyer Defendants did not advise Ms. Farrell to stop making payments to Bluegreen.

6. Ms. Farrell has not been released from her timeshare agreement with Bluegreen and she has been told by the Lawyer Defendants that the matter is in arbitration.

**B. Ms. Peterson's Testimony:**

7. Ms. Peterson is a Bluegreen timeshare owner.

8. Ms. Peterson has tried to sell the rights to her Bluegreen timeshare since 2014 but has been unable to do so.

9. Ms. Peterson was referred to the Lawyer Defendants by a timeshare exit company.

10. Ms. Peterson paid the timeshare exit company $8,000.

11. The timeshare exit company did not make any statements to Ms. Peterson concerning the maintenance fees or mortgage payments associated with her Bluegreen timeshare.

12. Ms. Peterson retained the Lawyer Defendants in June or July of 2019 to assist her with securing a release from her Bluegreen timeshare agreement. Ms. Peterson knew that the Lawyer Defendants were attempting to negotiate a resolution for her.

13. The Lawyer Defendants advised Ms. Peterson that ceasing payments on her Bluegreen timeshare could result in a number of legal ramifications. As a result of that advice, Ms. Peterson continued making payments on her Bluegreen timeshare and remained current.

14. The Lawyer Defendants provided Ms. Peterson with alternative ways to offset the losses incurred as a result of the Bluegreen timeshare, such as renting out her timeshare points for

a fee. Ms. Peterson entered into such an agreement, which offset her Bluegreen timeshare mortgage payments.

15. Ms. Peterson was never advised to cease making her Bluegreen timeshare payments.

### C. Ms. Parker's Proffered Testimony:

16. M&N Law attempted to elicit lay opinion testimony from Ms. Parker pursuant to Rule 701 of the Federal Rules of Evidence. However, because the opinion testimony Ms. Parker intended to offer was based on specialized knowledge she had developed as an advocate for timeshare clients, it fell outside the bounds of Rule 701 and Ms. Parker was not permitted to testify. See Fed. R. Evid. 701 ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is . . . not based on . . . specialized knowledge within the scope of Rule 702.").

### D. Mr. Montgomery's Testimony:

17. Mr. Montgomery is one of M&N Law's founding partners.

18. The Lawyer Defendants have represented timeshare owners since 2018.

19. Mr. Montgomery's process when he is approached by a timeshare owner who is seeking a release from their timeshare agreement is to: interview the timeshare owner; attempt to negotiate a settlement with the timeshare provider, if appropriate; and review the timeshare agreement for an arbitration provision. If there is no arbitration provision, the Lawyer Defendants engage in litigation.

20. The Lawyer Defendants have arbitrated numerous timeshare disputes. Several arbitration proceedings have successfully concluded and several are pending.

21. The Lawyer Defendants have also initiated lawsuits against timeshare companies on behalf of hundreds of timeshare owners.

22. The Lawyer Defendants have been appointed class counsel in a class action lawsuit against Bluegreen on behalf of over ten thousand Bluegreen timeshare owners. That class action was filed before the commencement of the Wyndham Case (Defendant/Counter-Plaintiff Ex. 5) and this action.

23. Mr. Montgomery has never instructed a timeshare owner to cease making their timeshare payments. Instead, the Lawyer Defendants advise timeshare owners of the potential ramifications associated with no longer making their timeshare payments.

24. Successful outcomes for timeshare clients have included awards of monetary damages and rescission of their timeshare agreements.

25. Bluegreen, Wyndham, and Shutts & Bowen are members of the American Resort Development Association ("ARDA").

26. Mr. Montgomery received correspondence dated March 13, 2019 from ARDA Trustee Richard D. Sargent, stating: "It is ARDA's mission this year to eradicate timeshare exit firms. One attorney has already been sued successfully . . . and is now disbarred. I have forwarded your firm[']s information to the appropriate committee at ARDA." See ARDA Correspondence (Defendant/Counter-Plaintiff Ex. 4).

27. Mr. Montgomery interpreted the ARDA Correspondence to mean that ARDA would join with timeshare companies to engage in protracted litigation against timeshare exit attorneys, without trying a case on the merits, in order to bankrupt them.

28. Mr. Montgomery believes that timeshare companies' litigation against timeshare exit firms is driving those companies out of business, resulting in fewer attorneys being available

7

to satisfy the demand from individuals seeking a release from their timeshare agreements, and thereby resulting in increased prices for timeshare exit services.

### E. Mr. Newcomb's Testimony:

29. Mr. Newcomb is one of M&N Law's founding partners.

30. Mr. Newcomb's practice is to warn timeshare owners of the potential ramifications associated with failing to make their timeshare payments. However, the decision of whether to continue making those payment is left to the timeshare owner.

### F. Mr. Hemingway's Testimony:

31. Mr. Hemingway is one of the alleged co-conspirators in this action.

32. Mr. Hemingway is aware of the allegations in the Complaint and believes that there was a good faith basis for the allegations made against the Lawyer Defendants.

33. Mr. Hemingway and the Lawyer Defendants entered into a vendor/client relationship relating to the timeshare exit business which lasted approximately a year and a half.

34. Mr. Hemingway claimed that he and the Lawyer Defendants were part of a scheme whose purpose was to lure timeshare owners into breaching their timeshare agreements with Bluegreen. Mr. Hemingway described the purported scheme as follows:

- The Lawyer Defendants reviewed all advertisements which bore their names and would opine and make suggestions as to the wording of those advertisements.
- Clients were convinced to pay timeshare exit fees by offering them a complete money back guarantee.
- One important part of the scheme was persuading a Bluegreen timeshare owner to pay the timeshare exit fee in lieu of making Bluegreen timeshare payments.

> ➢ The lawyer component was critical to the scheme because having a law firm available to represent prospective clients lent credibility to the endeavor.
>
> ➢ However, Mr. Hemingway acknowledged that the Lawyer Defendants did not pay for any advertisements and did not make any money back guarantees.

35. Although Mr. Hemingway claimed that the Lawyer Defendants were involved in many conversations concerning payment of Bluegreen timeshare fees, he was not aware of any instance where the Lawyer Defendants instructed a Bluegreen owner to stop making their Bluegreen timeshare payments.

36. According to Mr. Hemingway, Mr. Montgomery was physically present at sales presentations to prospective clients where the complete money back guarantee was marketed.

37. Mr. Hemingway used payments received from timeshare owners to compensate the Lawyer Defendants, who received in excess of $1.5 million for cases they accepted from Mr. Hemingway.

G. **Mr. Hunt's Testimony:**

38. Mr. Hunt testified as Bluegreen's corporate representative.

39. At the time the Complaint was filed in this action, Plaintiffs had a good faith basis for the allegations contained therein.

40. Prior to the commencement of this action, Bluegreen Companies were aware of: information that the Lawyer Defendants were participating with others in misleading Bluegreen timeshare owners; and the Wyndham Case and associated declarations making allegations against the Lawyer Defendants, including the Chavez Declaration (Plaintiffs Ex. 1).

41. Bluegreen Companies had not entered into an agreement or a coordinated legal strategy with any person or company to pursue this action against the Lawyer Defendants.

## LEGAL STANDARD

"A district court has broad discretion in granting or denying a preliminary injunction." Ndimbie v. Broward Cty. Hous. Auth., 2011 WL 13217296, at *1 (S.D. Fla. 2011) (citing Sierra Club v. Georgia Power Co., 180 F.3d 1309, 1310 (11th Cir. 1999)). To obtain a preliminary injunction, the moving party must clearly establish: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the [movant] outweighs the potential harm to the [nonmovant]; and (4) that the injunction will not disserve the public interest." Simon Prop. Grp., L.P. v. Casino Travel, Inc., 2019 WL 3002921, at *4 (S.D. Fla. 2019) (quoting Keister v. Bell, 879 F.3d 1282, 1287 (11th Cir. 2018)).

"In this Circuit, a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (alteration and internal quotation marks omitted) (citing United States v. Jefferson Cty., 720 F.2d 1511, 1519 (11th Cir. 1983)). If the movant is unable to show a substantial likelihood of success on the merits, the remaining prerequisites need not be considered. See Bloedorn v. Grube, 631 F.3d 1218, 1229 (11th Cir. 2011) (citing Pittman v. Cole, 267 F.3d 1269, 1292 (11th Cir. 2001)); see also Wreal, LLC v. Amazon.com, Inc., 840 F.3d 1244, 1248 (11th Cir. 2016) (Failure to meet even one of the four prerequisites "dooms" a request for preliminary injunction.) (citing Siegel, 234 F.3d at 1176)).

## DISCUSSION

Bluegreen Companies argue that the Motion for Preliminary Injunction should be denied because M&N Law is not likely to prevail on the Clayton Act claim asserted in Count III of the Amended Counterclaim, upon which the Motion for Preliminary Injunction is predicated. See Response [D.E. 115]. Specifically, Bluegreen Companies argue that: (1) M&N Law's Clayton

10

Act claim is barred by the *Noerr-Pennington* doctrine; (2) M&N Law lacks standing to pursue its Clayton Act claim; (3) there is no evidence of any agreement; and (4) there is no evidence of any anticompetitive effect on any market whatsoever. Id. at 5.

1. ***Whether M&N's Clayton Act claim is barred by the Noerr-Pennington doctrine.***

> The Noerr-Pennington doctrine shields a defendant from antitrust liability when the defendant "exercise[s] their right to petition government by resorting to administrative and/or judicial proceedings." Andrx Pharms., Inc. v. Elan Corp., 421 F.3d 1227, 1233 (11th Cir. 2005). The Eleventh Circuit has held that this doctrine protects threats of litigation as well as the actual initiation of litigation. McGuire Oil Co. v. Mapco, Inc., 958 F.2d 1552, 1560 (11th Cir. 1992).

Rebotix Repair LLC v. Intuitive Surgical, Inc., 2021 WL 1227593, at *4 (M.D. Fla. 2021) see also Andrx Pharms., Inc., 421 F.3d at 1233 ("*Noerr–Pennington* immunity thus shields a defendant from antitrust liability for resorting to litigation to obtain from a court an anticompetitive outcome."). However, "this immunity is not absolute: if a lawsuit is a 'sham,' then it is not protected by the First Amendment." Verbena Prod. LLC v. Pierre Fabre Dermo-Cosmetique USA, Inc., 2020 WL 2988587, at *4 (S.D. Fla. 2020) (citing Sabal Palm Condominiums of Pine Island Ridge Ass'n, Inc. v. Fischer, 2014 WL 988767, *22 (S.D. Fla. 2014)). "The party challenging immunity bears the burden to show that the lawsuit is a sham." Verbena Prod., 2020 WL 2988587, at *4 (citing Atico International USA, Inc. v. Luv N' Care, Ltd., 2009 WL 2589148, at *3 (S.D. Fla. 2009)).

> The Supreme Court developed a two-part test to determine if a lawsuit is a sham. The first part is objective: "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60 (1993). The second part, subjective: did the party bring the suit based on the party's belief that the process of the suit itself would further an illegal objective (for example, its belief that the costs of litigation would harm a competitor) rather than its belief that the potential outcome of the suit (i.e., judicial relief) made suing worthwhile. *See id.* at 56-57, 60-61; *White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000).

Verbena Prod. LLC, 2020 WL 2988587, at *5.

The Supreme Court has "noted that the existence of probable cause to bring a lawsuit is sufficient to thwart a claim that litigation was objectively baseless." Andrx Pharms., Inc., 421 F.3d at 1234 (citing Pro. Real Est. Invs., Inc., 508 U.S. at 62) ("The existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation."). "Probable cause to institute civil proceedings requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication." Pro. Real Est. Invs., Inc., 508 U.S. at 62–63 (alterations, internal quotations marks, and citation omitted). "Demonstrating that a lawsuit is objectively baseless is difficult." Verbena Prod. LLC, 2020 WL 2988587, at *5. "The court must remember that '[e]ven when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.'" Pro. Real Est. Invs., Inc., 508 U.S. at 61 n.5 (quoting Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n, 434 U.S. 412, 422 (1978)). As one Circuit has explained, "[w]e do not lightly conclude in any Noerr–Pennington case that the litigation in question is objectively baseless, as doing so would leave that action without the ordinary protections afforded by the First Amendment, a result we would reach only with great reluctance." White, 227 F.3d at 1232 (footnote omitted). "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." Pro. Real Est. Invs., Inc., 508 U.S. at 60.

With respect to the subjective prong of the *Noerr-Pennington* doctrine, this step is taken to "ascertain whether the actual motivation is to dragoon the 'governmental process' itself into use as a competitive tool. . . . The difficulty of proving subjective motivation obviously 'places a heavy thumb on the scale' in favor of granting protection." Campbell v. Pennsylvania Sch. Boards Ass'n, 972 F.3d 213, 219 (3d Cir. 2020) (footnotes omitted).

M&N Law argues that Bluegreen Companies' causes of action against it are "demonstrably, objectively baseless" because they are "premised on the contention that M&N Law does nothing more than send out pointless, form demand letters on behalf of timeshare owners and advise such owners, without any legal basis, to stop paying their timeshare obligations." See Reply [D.E. 116 at 3–4]. However, Mr. Hunt credibly testified that, prior to the commencement of this action, Bluegreen Companies were aware of the Wyndham Case and the Chavez Declaration filed in that case. Therein, Mr. Chavez averred that he had received complaints from timeshare owners that "Montgomery, Newcomb, Montgomery Law and/or M&N Law failed to provide any actual services to assist them in exiting their timeshare contracts. Many of those customers requested refunds . . . because . . . Montgomery, Newcomb, Montgomery Law and/or M&N Law failed to provide any services." See Chavez Decl. (Plaintiffs Ex. 1 at 202). Bluegreen Companies' awareness of and reliance on the Chavez Declaration prior to the commencement of this action provides the required probable cause to shield Bluegreen Companies from antitrust liability pursuant to the *Noerr-Pennington* doctrine. Verbena Prod. LLC, 2020 WL 2988587, at *5; White, 227 F.3d at 1232; Rebotix Repair LLC, 2021 WL 1227593, at *4; Pro. Real Est. Invs., Inc., 508 U.S. at 60. Moreover, given Mr. Hunt's credible and unrebutted testimony, M&N Law has failed to carry its difficult burden of demonstrating that Bluegreen Companies lacked the requisite probable cause. Therefore, M&N Law has failed to establish the objective prong of the sham lawsuit exception to the *Noerr-Pennington* bar.

For completeness, the undersigned also addresses M&N Law's argument with respect to the subjective prong of the *Noerr-Pennington* sham litigation exception. Pro. Real Est. Invs., Inc., 508 U.S. at 60. M&N Law contends that the commencement of this action and the "virtually *identical*" Wyndham Case through the Shutts & Bowen law firm, all members of ARDA, whose

mission is to "eradicate timeshare exit firms," was done "for the purpose of driving [companies and individuals assisting timeshare owners] out of business." See Motion for Preliminary Injunction [D.E. 114 at 7–9]; Reply [D.E. 116 at 4]; ARDA Correspondence (Defendant/Counter-Plaintiff Ex. 4).

However, the undersigned finds that the circumstantial evidence cited by M&N Law is insufficient to: overcome "a heavy thumb on the scale" in favor of granting Bluegreen Companies' First Amendment protection; and satisfy M&N Law's burden of demonstrating that Bluegreen Companies' subjective intent in instituting this action was to put the Lawyer Defendants out of business rather than obtaining the relief sought in its Complaint. Campbell, 972 F.3d at 219; Verbena Prod., 2020 WL 2988587, at *4. Therefore, the undersigned finds that M&N Law has failed to sustain its burden with respect to the subjective prong of the *Noerr-Pennington* sham litigation exception.

Thus, the undersigned concludes that M&N Law's Clayton Act claim is barred by the *Noerr-Pennington* doctrine. Assuming *arguendo* that Bluegreen Companies were not shielded by the *Noerr-Pennington* doctrine, however, "even a plaintiff who defeats the defendant's claim to *Noerr* immunity by demonstrating both . . . components of a sham must still prove a substantive antitrust violation. Proof of a sham merely deprives the defendant of immunity; it does not relieve the plaintiff of the obligation to establish all other elements of his claim." Pro. Real Est. Invs., Inc., 508 U.S. at 61. Therefore, the undersigned addresses Bluegreen Companies' remaining challenges to M&N Law's Clayton Act claim, namely: lack of standing to pursue its Clayton Act claim; no evidence of any agreement; and no evidence of any anticompetitive effect on any market whatsoever.

2. *<u>Whether M&N Law lacks standing to bring its Clayton Act claim.</u>*

"Standing for injunctive relief under the antitrust laws requires that the plaintiff [show] 'threatened injury that would constitute antitrust injury if inflicted upon the plaintiff and the defendant's causal responsibility for such threatened injury.'" <u>Med. Sav. Ins. Co. v. HCA, Inc.</u>, 2005 WL 1528666, at *8 n.9 (M.D. Fla. 2005) (quoting <u>Todorov v. DCH Healthcare Auth.</u>, 921 F.2d 1438, 1451 (11th Cir. 1991)). Antitrust injury is defined as an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes [the] defendants' acts unlawful." <u>Sentry Data Sys., Inc. v. CVS Health</u>, 361 F. Supp. 3d 1279, 1287 (S.D. Fla. 2018) (alteration in original) (quoting <u>Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.</u>, 429 U.S. 477, 489 (1977)).

M&N Law argues that it has suffered an antitrust injury because "Plaintiffs' anti-competitive conduct is keeping timeshare prices artificially high by restricting supply." <u>See</u> Motion for Preliminary Injunction [D.E. 114 at 14]. However, other that the belief expressed by Mr. Montgomery in his testimony, M&N Law has failed to provide any evidence to support this claim. "A motion for preliminary injunction must be supported by evidence; a party is not entitled to preliminary injunctive relief 'solely on the basis of its naked allegations.'" <u>New Vision Eye Ctr., LLC v. Fla. Eye Inst., PA</u>, 2010 WL 11602458, at *2 (S.D. Fla. 2010) (quoting <u>Church of Scientology Flag Serv. Org. v. City of Clearwater</u>, 777 F.2d 598, 608 (11th Cir. 1985)). Therefore, M&N Law has failed to establish the requisite standing to pursue its request for injunctive relief under the Clayton Act.

3. *<u>Whether M&N Law can establish any antitrust agreement.</u>*

Section 1 of the Sherman Act provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with

foreign nations, is declared to be illegal." 15 U.S.C. § 1. "'Despite the different terminology, there is no magic unique to each term' in § 1; the terms 'contract,' 'combination,' and 'conspiracy' are used interchangeably to capture the concept of concerted action, that is an 'agreement.'" Am. Contractors Supply, LLC v. HD Supply Constr. Supply, Ltd., 989 F.3d 1224, 1232 (11th Cir. 2021) (quoting Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co., 932 F.2d 1384, 1388 (11th Cir. 1991)). "The first inquiry, in any section 1 claim, then, is to locate the agreement that restrains trade." Tidmore Oil Co., 932 F.2d at 1388.

> The Eleventh Circuit has provided guidance . . . on the type of circumstantial evidence required to prove an agreement: "To ensure that we do not punish unilateral conduct, however, we require more than mere evidence of parallel conduct by competitors to support an inference of a conspiracy, an agreement is properly inferred from conscious parallelism only when 'plus factors' exist."

In re Managed Care Litig., 2006 WL 8440832, at *2 (S.D. Fla. 2006) (quoting Todorov, 921 F.2d at 1456 n.30). "'Plus factor' evidence is evidence that 'tend[s] to exclude the possibility that the defendants merely were engaged in lawful conscious parallelism.'" In re Managed Care Litig., 2006 WL 8440832, at *2 (quoting City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548, 572 (11th Cir. 1998)).

As noted above, M&N Law argues that Bluegreen Companies and Wyndham have entered into an agreement to drive timeshare exit companies, and associated law firms, out of business. See Motion for Preliminary Injunction [D.E. 114 at 7–9]. In support of this argument, M&N Law cites to: Bluegreen and Wyndham's "virtually *identical*" parallel lawsuits; Bluegreen Companies' and Wyndham's parallel use of the Shutts & Bowen law firm in their respective actions; and Bluegreen Companies', Wyndham's, and the Shutts & Bowen law firm's membership in ARDA, whose mission is to "eradicate timeshare exit firms." Id.

16

However, Bluegreen Companies' and Wyndham's parallel conduct of initiating allegedly "virtually *identical*" lawsuits against M&N Law using the Shutts & Bowen firm, standing alone, is not enough to "support an inference of a conspiracy." In re Managed Care Litig., 2006 WL 8440832, at *2. Moreover, the "plus factor" evidence of Bluegreen Companies', Wyndham's, and the Shutts & Bowen firm's membership in ARDA is not sufficient to "exclude the possibility that [these entities] were engaged in lawful conscious parallelism." In re Managed Care Litig., 2006 WL 8440832, at *2 (quoting City of Tuscaloosa, 158 F.3d at 572); see also In re Salmon, 2021 WL 1109128, at *16 (S.D. Fla. 2021) ("[M]ere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement.") (alteration in original) (quoting In re Musical Instruments & Equip. Antitrust Litig., 798 F.3d 1186, 1196 (9th Cir. 2015)). Therefore, M&N Law has failed to establish the existence of an antitrust agreement as required by Section 1 of the Sherman Act.

4. *Whether M&N Law can establish any anticompetitive effect.*

> In assessing whether an agreement unreasonably restrains trade such that it violates Section One [of the Sherman Act], courts generally apply one of three modes of antitrust analysis: (1) the *per se* rule, for obviously anticompetitive restraints; (2) the quick look approach, for those restraints with some procompetitive justification; or (3) the full "rule of reason," for restraints whose net impact on competition is particularly difficult to determine.

In re Terazosin Hydrochloride Antitrust Litig., 352 F. Supp. 2d 1279, 1310–11 (S.D. Fla. 2005) (citing Cont'l Airlines, Inc. v. United Airlines, Inc., 277 F.3d 499, 508–09 (4th Cir.2002)). "Claims under the Sherman Act are presumptively evaluated under the rule of reason." Retina Assocs. P.A. v. S. Baptist Hosp. of Fla. Inc., 1996 WL 529206, at *3 (M.D. Fla. 1996) (citing Levine v. Cent. Florida Medical Affiliates, 72 F.3d 1538, 1549 (11th Cir.1996)). The quick look approach "applies where 'an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and

markets.'" Procaps S.A. v. Patheon, Inc., 845 F.3d 1072, 1084 n.3 (11th Cir. 2016) (quoting California Dental Ass'n v. FTC, 526 U.S. 756, 770 (1999)).

"[T]he rule of reason requires a plaintiff to prove the anticompetitive effect of the challenged conduct on the relevant market, and that the conduct has no procompetitive benefit or justification." In re Terazosin Hydrochloride Antitrust Litig., 352 F. Supp. 2d at 1312 (citing Levine, 72 F.3d at 1551). "The whole point of the rule of reason is to furnish 'an enquiry meet for the case, looking to the circumstances, details, and logic of a restraint' to ensure that it unduly harms competition before a court declares it unlawful." Nat'l Collegiate Athletic Ass'n v. Alston, 141 S. Ct. 2141, 2160 (2021) (citing California Dental Ass'n v. F.T.C., 526 U.S. 756, 781 (1999)). "Under the rule of reason, courts examine the reasonableness of the restraint by analyzing things like the nature of the restraint, its effects, and its history." Winn-Dixie Stores, Inc. v. Se. Milk, Inc., 2019 WL 13038733, at *4 (M.D. Fla. 2019) (quoting Procaps S.A. v. Patheon Inc., 36 F. Supp. 3d 1306, 1323 (S.D. Fla. 2014)); see also United States v. Topco Assocs., Inc., 405 U.S. 596, 607 (1972) ("An analysis of the reasonableness of particular restraints includes consideration of the facts peculiar to the business in which the restraint is applied, the nature of the restraint and its effects, and the history of the restraint and the reasons for its adoption.") (citing Bd. of Trade of City of Chicago v. United States, 246 U.S. 231, 238 (1918)).

M&N Law argues that the quick look rather than the presumptive rule of reason approach applies here because "even an observer with a rudimentary understanding of economics would conclude that Plaintiffs' litigation has an anti-competitive effect on consumers." See Motion for Preliminary Injunction [D.E. 114 at 12]. M&N Law further contends that:

> the point of this litigation is to eliminate the unhappy timeshare owner's access to resources relevant to a decision to default, so that the owner is less likely to choose to default and have his or her timeshare interests returned to the market. The litigation is patently anti-competitive because, by keeping these unwanted

>  timeshare interests from becoming part of the available timeshare supply, the timeshare companies are artificially restricting the supply and increasing the market price of timeshares.

Id. at 12–13 (footnote omitted).  Contrary to M&N Law's unsupported contentions, however, it is unclear how this litigation would have an anticompetitive effect on timeshare consumers and markets.  Procaps S.A., 845 F.3d at 1072.  Therefore, the presumptive rule of reason, rather than the quick look, approach applies here.  Id.

Applying the rule of reason approach, M&N Law has provided nothing in the way of concrete evidence proving both the purported anticompetitive effects of this litigation on the timeshare market and its consumers and that this litigation has no procompetitive benefits or justification.  In re Terazosin Hydrochloride Antitrust Litig., 352 F. Supp. 2d at 1312; see also Procaps S.A., 845 F.3d at 1084 ("Significantly, a plaintiff may not meet its burden of showing actual anticompetitive effects with mere conclusory assertions; rather, we have repeatedly required a plaintiff to point to specific facts demonstrating harm to competition.") (citing Jacobs v. Tempur-Pedic Int'l, Inc., 626 F.3d 1327, 1339 (11th Cir. 2010)).  Accordingly, M&N Law has failed to show that the commencement of this litigation unreasonably restrains trade in violation of Section 1 of the Sherman Act.  In re Terazosin Hydrochloride Antitrust Litig., 352 F. Supp. 2d at 1310–11.

Because M&N Law is unable to show a substantial likelihood of success on the merits of its Clayton Act claim, the undersigned need not consider the remaining preliminary injunction prerequisites.  Bloedorn, 631 F.3d at 1229 ("If [the movant] is unable to show a substantial likelihood of success on the merits, we need not consider the other requirements.") (citing Pittman, 267 F.3d at 1292); Wreal, LLC, 840 F.3d at 1248 (Failure to meet even one of the four prerequisites "dooms" a request for preliminary injunction.) (citing Siegel, 234 F.3d at 1176)).

As noted above, M&N Law also requests a "stay as to Plaintiffs' claims against M&N Law and its attorneys, pending resolution of Count III of the Counterclaim." See Motion for Preliminary Injunction [D.E. 114 at 3]. "A court has broad discretion in determining whether to grant a stay." Seffar v. Fin. Bus. & Consumer Sols., Inc., 2021 WL 2980539, at *1 (S.D. Fla. 2021) (citing Ortega Trujillo v. Conover & Co. Commc'ns, 221 F.3d 1262, 1264 (11th Cir. 2000)). Given the lack of merit in M&N Law's Motion for Preliminary Injunction, the undersigned finds no reason to grant the requested stay and recommends that it be denied.

## RECOMMENDATION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that M&N Law's Motion for Preliminary Injunction [D.E. 114] be DENIED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **seven days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Jose E. Martinez. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 10th day of September, 2021.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:   United States District Judge Jose E. Martinez
      Counsel of Record