## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:19-cv-24704-JEM

BLUEGREEN VACATIONS UNLIMITED, INC., a
Florida corporation; and BLUEGREEN VACATIONS
CORPORATION, a Florida corporation,

      Plaintiffs,

v.

THE MONTGOMERY LAW FIRM, LLC, a Missouri
limited liability company; MONTGOMERY &
NEWCOMB, LLC, a Missouri limited liability
company; M. SCOTT MONTGOMERY, ESQ., an
individual; W. TODD NEWCOMB, ESQ., an
individual; PRINCIPAL TRANSFER GROUP, LLC,
a Missouri limited liability company; JASON LEVI
HEMINGWAY, an individual; CLS, INC. d/b/a
ATLAS VACATION REMEDIES and also d/b/a
PRINCIPAL TRANSFER GROUP, a Missouri
corporation; SQUARE ONE DEVELOPMENT
GROUP, INC., a Missouri corporation; SQUARE
ONE HOLDING GROUP, INC., a Colorado
corporation; CONSUMER LAW PROTECTION,
LLC, a Missouri limited liability company;
CONSUMER RIGHTS COUNCIL, INC., a Missouri
not-for-profit corporation; RESORT TRANSFER
GROUP, LLC, d/b/a CONSUMER LAW
PROTECTION LAWYERS, a Missouri limited
liability company; PREMIER RESERVATIONS
GROUP, LLC, a Missouri limited liability company;
GEORGE L. REED, an individual; LOUANN REED,
an individual; RESORT CONSULTING GROUP
LLC, a Missouri limited liability company; TAYLOR
E. PETTIT, an individual; and GERALD STRACKE,
an individual,

      Defendants.

## AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, BLUEGREEN VACATIONS UNLIMITED, INC. ("BVU"), and BLUEGREEN VACATIONS CORPORATION ("BVC") (together, "Plaintiffs" or "Bluegreen"), hereby sue the following entities and individuals (collectively, the "Defendants"): THE MONTGOMERY LAW FIRM, LLC, a Missouri limited liability company ("Montgomery Law"); MONTGOMERY & NEWCOMB, LLC, a Missouri limited liability company ("M&N Law"); M. SCOTT MONTGOMERY, ESQ., an individual ("Montgomery"); W. TODD NEWCOMB, ESQ., an individual ("Newcomb") (Montgomery Law, M&N Law, Montgomery, and Newcomb referred to herein as the "Montgomery Law Defendants"); PRINCIPAL TRANSFER GROUP, LLC, a Missouri limited liability company ("PTG"); JASON LEVI HEMINGWAY, an individual ("Hemingway"); CLS, INC. d/b/a ATLAS VACATION REMEDIES and also d/b/a PRINCIPAL TRANSFER GROUP, a Missouri corporation ("CLS"); SQUARE ONE DEVELOPMENT GROUP, INC., a Missouri corporation ("Square One"); SQUARE ONE HOLDING GROUP, INC. ("SOHG"); CONSUMER LAW PROTECTION, LLC, a Missouri limited liability company ("CLP"); RESORT TRANSFER GROUP, LLC d/b/a CONSUMER LAW PROTECTION LAWYERS, a Missouri limited liability company ("CLP Lawyers"); CONSUMER RIGHTS COUNCIL, INC., a Missouri not-for-profit corporation ("CRC"); PREMIER RESERVATIONS GROUP, LLC ("PRG"); GEORGE REED, an individual; LOUANN REED, an individual; RESORT CONSULTING GROUP LLC, a Missouri limited liability company ("RCG"); Gerald Stracke, an individual ("Stracke"); and Taylor E. Pettit, an individual ("Pettit") (RCG, Stracke and Pettit are referred to as the "RCG Defendants").

## I.     __Introduction__

1.      This action is based on the simple premise that it is inherently false and misleading for a non-party to a contract to advertise and sell any ability to legally release a party from the obligations of that contract when that non-party has no legitimate basis or means to do so.

2.      Individuals who purchase timeshare interests through Bluegreen (the "Bluegreen Owners") enter into valid and binding purchase agreements, also referred to as Owner Beneficiary Agreements. If a Bluegreen Owner obtains financing for their purchase, the Bluegreen Owner may also execute a promissory note (the purchase agreement and note, if applicable, are referred to herein as the "Timeshare Contracts"). Those Timeshare Contracts control the benefits and obligations of vacation ownership and the relationship between Bluegreen and the Bluegreen Owners.

3.      Defendants, who are non-parties to the Timeshare Contracts, are a group of individuals and entities that operate in conjunction to perpetuate "timeshare exit" schemes. They solicit Bluegreen Owners by advertising and offering the ability to legally release or "cancel" the Bluegreen Owners' from the Timeshare Contracts. Defendants Square One, SOHG, PTG, Hemingway, CLS, CLP, RTG, CRC, PRG, George Reed, LouAnn Reed, and the RCG Defendants are sometimes referred to in this Amended Complaint as the "TPE Defendants").

4.      The advertising is conducted by several of the Defendants, including but not limited to Square One, SOHG, CLP, PTG and the RCG Defendants. Other than being separate corporate entities, the business operations and advertisements of Square One, SOHG, CLP, PTG and the RCG Defendants are substantively the same.

5.      However, under Florida law, the "cancellation" of a Timeshare Contract is a specific, non-waivable rescission right held by Bluegreen Owners that can only be exercised within a certain time period following the execution of a Timeshare Contract. *See* **Fla. Stat.** § 721.10. It is not a service that can be advertised, sold, or provided in commerce.

6.      By advertising "cancellation" to Bluegreen Owners who are not within the applicable rescission period, Defendants claim that they possess a means of "timeshare cancellation" is inherently false and deceptive.

7.      Defendants even guarantee that Bluegreen Owners will be legally and permanently exited from their Timeshare Contracts if they use Defendants' services.

8.      The following is a representative advertisement published by Hemingway and PTG on the website http://www.principaltransfergroup.com:





9.      The following is a representative advertisement published by Square One at https://squareonehelp.com:



10.     The RCG Defendants' representative advertisement is to the same effect.  *See* https://www.resortconsultinggroup.com/services.html.  True and correct copies of the services advertised on RCG's website, a sample letter sent by Defendant Pettit soliciting a timeshare owner (asserting that RCG has "found a way to exploit a clause in your contract with the resort company to force them to let you out of the contract and return your money"), a sample certificate guaranteeing 100% money back guarantee, and a sample quote for services RCG offers (reiterating the money back guarantee) are attached as **Composite Exhibit A**.

11.     Because a guarantee of that nature would violate ethical rules, including the Florida Bar Rules of Professional Conduct[1], if advertised directly by the Montgomery Law Defendants, the non-lawyer TPE Defendants publish these advertisements and solicit Bluegreen Owners for purported legal services on behalf the Montgomery Law Defendants and CLP Lawyers with their knowledge and consent.

12.     Through these false and misleading advertisements, Defendants deceive Bluegreen Owners into retaining Defendants, at substantial cost, to implement Defendants' purported "cancellation" services related to their Timeshare Contracts.

---

[1] Rule 4-7.13(b), Florida Rules of Professional Conduct, states: "'Deceptive or inherently misleading advertisements include, but are not limited to advertisements that contain: (1) statements or information that can reasonably be interpreted by a prospective client as a prediction or guaranty of success or specific results...'"

13.     Unfortunately for these Bluegreen Owners, the "services" Defendants sell typically result in an outcome very different than what Defendants promise.

14.     Once paid, Defendants instruct, deceive, induce, or persuade Bluegreen Owners to stop fulfilling their contractual obligations under the Timeshare Contracts, as a means of facilitating the "exit" or "cancellation."

15.     Even if they state otherwise in writing, Defendants instruct, deceive, induce, or persuade Bluegreen Owners to stop making payments under the Timeshare Contracts.  There are three purposes to doing this:

     i.     it helps Defendants justify their fees by claiming that the Bluegreen Owner is saving money by not making payments to Bluegreen as required by the Timeshare Contracts;

     ii.     it diverts the funds of the Timeshare Owners from Bluegreen to Defendants, causing Bluegreen damages; and

     iii.     it ensures a Bluegreen Owner will go into default on their Timeshare Contract, allowing Defendants to claim success at "cancelling" or "exiting" a Bluegreen Owner from their Timeshare Contract, a false and misleading characterization which harms the Bluegreen Owner.

16.     Defendants do not disclose to the Bluegreen Owners the consequences of ceasing payments, or that their "cancellation" and "exit" will actually result in an unlawful breach of the Timeshare Contracts due to non-payment, leading to a termination of their timeshare interests.

17.     Nevertheless, after the Timeshare Contracts have been terminated for non-payment, Defendants then misrepresent to these former Bluegreen Owners that they were successful in "cancelling" or "exiting" their Timeshare Contracts.

18.     Cancellation or rescission of a contract is very different in nature than a breach and termination.  But Defendants advertise the former only to mislead Bluegreen Owners into the latter.

19.     Each Bluegreen Owner pays Defendants thousands of dollars to essentially breach a Timeshare Contract that the Bluegreen Owner could have breached on his or her own, for free. Defendants' "cancellation" services are therefore illusory, and the Bluegreen Owners often do not realize the scam until after the damage is done when their credit rating is badly hurt due to the default.

20.     Upon information and belief, Defendants routinely refuse refunds to timeshare owners who default on their Timeshare Contract due to non-payment.

**II.     Defendants act in concert to facilitate the scheme.**

21.     In causing the unlawful breach of Timeshare Contracts, each Defendant plays a specific role necessary to effectuate and complete the scheme.   An organizational chart illustrating the inter-relationship amongst the Defendants is attached hereto as **Exhibit B**.

22.     To lend credibility to the scheme, the TPE Defendants solicit Bluegreen Owners by claiming to provide them with a legal means of releasing them from their Timeshare Contracts. This is the role filled by the Montgomery Law Defendants, as well as CLP Lawyers, which purports to operate as a "law firm."  The TPE Defendants use both, except for the RCG Defendants who have been using the Montgomery Defendants.

23.     The TPE Defendants directly, or through third-parties, disseminate information about the Montgomery Law Defendants and CLP Lawyers at their presentations and utilize referral forms created and/or approved by the Montgomery Law Defendants.

24.     The promise of a lawyer during the solicitation is critical to the effectiveness and profitability of the scheme as the TPE Defendants are able to charge exorbitant upfront fees under the auspice that the Bluegreen Owner will receive legal services.

25.     Standing behind the apparent credibility of a law firm, the Defendants can also further rationalize their claims of a guaranteed legal release and more effectively induce the Bluegreen Owners to immediately cease further payments and stop communicating with Bluegreen.

26.     The Montgomery Law Defendants facilitate the transaction by providing the TPE Defendants with a referral form that is executed by the timeshare owner and then provided to the Montgomery Law Defendants.

27.     The TPE Defendants collect the fees paid by timeshare owners before the Montgomery Law Defendants and CLP Lawyers have met with or even spoken to the timeshare owner.

28.     The TPE Defendants share those fees with the Montgomery Law Defendants and CLP Lawyers, with the TPE Defendants receiving a majority of the fees collected.

29.     The Bluegreen Owners never pay the Montgomery Law Defendants or CLP Lawyers directly.

30.     Such an arrangement violates a number of state bar association rules, including, without limitation, Rule 4-7.22 of the Florida Rules of Professional Conduct, which generally prohibits the splitting of attorney fees with referral sources.

31.     As a result, if a Bluegreen Owner seeks a refund of the fees paid, the Montgomery Law Defendants and CLP Lawyers would be unable to accommodate this request and would instead have the Bluegreen Owner seek a refund from the TPE Defendants directly.

32.     The Montgomery Law Defendants and CLP Lawyers agree in advance to represent the timeshare owners solicited by the TPE Defendants and authorize the TPE Defendants to enter timeshare owners into agreements for services and to collect fees without having ever met the purported "client."

33.     As the Montgomery Law Defendants and CLP Lawyers rely on the TPE Defendants to solicit timeshare owners and sign them up (in the case of the Montgomery Law Defendants, using referral forms created by the Montgomery Law Defendants), the Montgomery Law Defendants and CLP Lawyers participate in and approve the TPE Defendants methods of advertising and means of solicitation.   Additionally, at least one of the Montgomery Law Defendants has actively negotiated at least one agreement with at least one of the TPE Defendants.

34.     The Montgomery Law Defendants and CLP Lawyers are aware of, contribute to, and materially participate in the false advertising by the TPE Defendants as detailed herein.

35.     Once signed up, the Montgomery Law Defendants and CLP Lawyers engage in largely perfunctory tasks on behalf of timeshare owners, including the transmission of numerous boilerplate demand letters from the Montgomery Law Defendants and CLP Lawyers on behalf of Bluegreen Owners.

36.     These form letters allege various misrepresentations by Bluegreen's representatives during the inducement and formation of the Timeshare Contracts.

37.     After the Montgomery Law Defendants and CLP Lawyers send the demand letters, the TPE Defendants do little more than facilitate the exchange of information between the Bluegreen Owners and the Montgomery Law Defendants and CLP Lawyers.  In other words, the TPE Defendants' "exit services" merely involve waiting for the Bluegreen Owner to go into

default. The advertised services are therefore illusory.

38.     Hemingway, individually, directs and controls the actions of CLS and PTG, including the manner in which the services are marketed and sold to Bluegreen Owners.

39.     Hemingway personally directs the scheme to defraud Bluegreen Owners and harm Bluegreen.

40.     Hemingway is aware that PTG and CLS have no legitimate means of providing the services advertised and created CLS and PTG as shells designed to allow Hemingway to carry out illegal activities.

41.     Montgomery is personally liable for the actions of Montgomery Law and M&N Law as he is a principal partner in each of the firms and has personal, direct and total control over all aspects of the firms, their interworking and their actions.

42.     Newcomb is personally liable for the actions of M&N Law as he is a principal partner of the firms and has personal direct and total control over all aspects of the firms, their interworking and their actions.

43.     CRC is a non-profit organization that was formed in 2020 that carries out multiple functions. First, CRC touts itself publicly as an independent industry "watch dog" advocating on behalf of timeshare owners.

44.     In fact, CRC's webpage states that "[w]e're here to educate and regulate," and "C.R.C. provides useful information for owners to safely & responsibly exit their timeshares for those that qualify."

45.     By purporting to act as an independent entity, CRC's primary role in the scheme is to lend false third-party validation to the other Defendants, who advertise they are "accredited" or "certified" by the CRC.

- 10 -

III.   **Defendants engage in false and misleading advertising.**

46.     The Defendants deploy various methods of false and misleading advertising targeted at Bluegreen Owners to solicit the Defendants' so-called "exit" or "transfer" services.

47.     While most of the Defendants operate websites that advertise their so-called services, the TPE Defendants also work independently and jointly to host in-person sales presentations, conduct sales calls, and send mail advertisements to Bluegreen Owners.  Often, the telemarketing and mail marketing efforts are aimed at getting Bluegreen Owners to an in-person sales presentation.

48.     The ultimate goal of the various methods of advertising and solicitation is to convince Bluegreen Owners that the Defendants have the ability to legally release the Bluegreen Owner from their Timeshare Contract.  As the Defendants do not have this ability, their advertising is, by nature, false and/or misleading.

     a.   **General Content of the False and/or Misleading Advertising**

49.     Regardless of the method of advertising, the advertising content is generally consistent (and consistently false and/or misleading) among the numerous TPE Defendants.

50.     At their core, the advertisements falsely represent how the TPE Defendants supposedly assist Bluegreen Owners with the termination of their Timeshare Contracts.  In short, TPE Defendants mislead Bluegreen Owners into thinking that the Defendants' services and commercial activities will lead to a lawful release, rescission, cancellation, or transfer of their Timeshare Contracts, when in reality, the Defendants deceive and induce Bluegreen Owners into breaching the Timeshare Contracts which unlawfully terminates those Timeshare Contracts.

51.     The advertisements are false and/or misleading by including one of more of the following promises about the Defendants' services:

- 11 -

i.    Stating that their services or commercial activities provide an "exit," "cancellation," or "release" of a timeshare contract, or by using any other word or phrase (i.e. "get out") that means or implies the lawful release of the timeshare owner's obligations under a timeshare contract.

ii.   Stating that their services or commercial activities provide a "process" or "method" that results in a timeshare owner being free from the obligations and benefits of a timeshare contract.

iii.  Stating that their services or commercial activities provide a "legal," "lawful," "legitimate," or "safe" means of cancelling or transferring a timeshare contract or otherwise releasing or freeing a timeshare owner from the obligations and benefits of a timeshare contract.  The TPE Defendants falsely equate (i) the termination of a Timeshare Contract through breach(the actual result of their "cancellation" or "transfer" services) with (ii) a "lawful" or "legitimate" result.

iv.   Stating that their services or commercial activities provide a "guaranteed" means of cancelling or transferring a timeshare contract or otherwise releasing or freeing a timeshare owner from the obligations and benefits of a timeshare contract.

v.    Stating that their services or commercial activities allow a timeshare owner to stop paying mortgage payments or fees, including maintenance fees, or to otherwise avoid the contractual obligations of a timeshare contract.

52.    Hemingway, through CLS and/or PTG, owns, operates, controls, and/or is otherwise responsible for the content of www.principaltransfergroup.com and www.atlasvacationremedies.com, among others.

53.    The content of www.principaltransfergroup.com includes or has included the following statements:

    i.    "Our solutions are tailored to each individual client, and the method we use to get you out of your timeshare depends on your particular situation. We have a very skilled in-house team, but we will retain an attorney on your behalf if needed. Because each client's situation is unique, the time frame can vary for each customer. Typically we can have you out in 120 - 180 days. Rest assured that we stand by our 100% money-back guarantee. We will do what we say or we will refund every cent." (www.principaltransfergroup.com)

    ii.    "You're Timeshare Free!  After we have successfully eliminated your obligation to your timeshare, you will receive notification from your Client Management team to share the good news, and you will also receive written confirmation of the elimination for your records. Read testimonials below from other former timeshare owners about their experience with our services." (www.principaltransfergroup.com)

    iii.    "Are there any requirements for using our service?  We can help people in almost any circumstance. Remember, with our free consultation and our 100% money back guarantee you can determine if we are the right choice for you to partner with."  (www.principaltransfergroup.com)

iv.    "Will my name be off the Timeshare ownership documents?  Yes! Ownership is legitimately transferred. Depending on the property of record, title is transferred via deed, membership, lease, assignment, or as required by resort official governing documents (covenants, conditions, restrictions)." (www.principaltransfergroup.com)

v.    "What happens if you are unsuccessful at exiting me from my timeshare? In the very rare situation that we are unable to obtain a successful exit opportunity, we proudly stand by our 100% money back guarantee and you will receive a full refund of your fee." (www.principaltransfergroup.com)

54.    CLS and PTG has engaged in false and/or misleading advertising through fake consumer reviews on their websites, www.atlasvacationremedies.com and www.principaltransfergroup.com:

i.    Both the Atlas Vacation Remedies website and the Principal Transfer Group website list the following 'reviews'/'testimonials':

i.    "I would recommend Principal Transfer Group[2] to anyone looking to get out of their timeshare.  We are free and clear of ours and couldn't be happier!  Thank you!  - Susan M.";

ii.    "Everyone that I spoke with and everyone that I worked with were very professional, honest and stayed in contact with me throughout the process.  I would recommend this company to anyone that needs to get out of their timeshare. – Pam S."; and

---

[2] This is not a typo, the 'Customer Review' for 'Susan M.' on the Atlas Vacation Remedies website refers to Principal Transfer Group.

iii.    "Our consultant was very understanding of our particular situation and worked with us to find the best fit for us from the program they have in place. I would highly recommend that anyone looking to get out of their timeshare to give them a call. There are no high-pressure sales tactics with this company. We asked for a few days to look things over and call them back. We called them a week later and the deal was still good. We are now timeshare free and could not be happier. Thanks Principal Transfer Group!  - Thomas J.".

ii.    CLS and/or PTG's website has also contained "stock" photographs of the alleged 'reviewers' to make it appear as if they are real people when they are, in fact, not.

55.    Square One owns, operates, controls, and/or is otherwise responsible for the content of www.squareonehelp.com.

56.    The content of www.squareonehelp.com includes or has included the following statements:

i.    "When enough is enough, we step in with our industry leading timeshare specialists, legal team, and quality assurance personnel and take the reins." (www.squareonehelp.com)

ii.    "No more being bullied by the big timeshare conglomerates. We will take the proper steps to legally and permanently relieve you and your family of your timeshare's financial liability, freeing you and your family from decades of fees and headaches." (www.squareonehelp.com)

iii.   "Square One Group's unparalleled timeshare elimination process will rid you of your unwanted timeshare." (www.squareonehelp.com)

iv.   "The resorts are shielded with layers of legal protection created by their attorneys and lobbyists that makes it feel virtually impossible to get rid of your timeshare without expert help and representation." (www.squareonehelp.com)

v.   "Upon receiving all necessary documents, we have a full picture of your ownership situation, allowing us to identify the best exit strategy for you. We put together a team of exclusive network partners and attorneys who will transfer ownership or negotiate to get you out of your timeshare. Our approach is unmatched and has allowed us to obtain exits from over one thousand different resorts." (www.squareonehelp.com/services/)

vi.   "The exit timeline will depend on a variety of factors, but typically ranges between 3 to 6 months. We are always searching the market for new exit opportunities and will adjust your case strategy if a more expedited exit path is identified. We hold ourselves and our partners accountable for finding you the quickest exit possible. Square One Group guarantees you will be exited from ownership safely, legally, and forever, or you receive your money back." (www.squareonehelp.com/services/)

vii.   "We stand behind our 100% money back guarantee." (www.squareonehelp.com/services/)

57.     These statements are false because they state or imply that Square One has a process to legitimately exit, terminate, or cancel timeshare ownership when no such process exists, and because Square One fails to honor its money-back guarantees to timeshare owners.

58.     In addition, according to the Better Business Bureau website, Square One also previously falsely advertised that it had an A+ BBB Rating, and the BBB was required to send a cease and desist letter to stop Square One's false advertising. https://www.bbb.org/us/mo/des-peres/profile/timeshare-cancellation/square-one-development-group-inc-0734-1000010028/details#Alert.

59.     CLP owns, operates, controls, and/or is otherwise responsible for the content of www.consumerlawprotection.com.

60.     The content of www.consumerlawprotection.com includes or has included statements to give the false impression that CLP is a law firm when it is not.  A true and correct copy of CLP's website containing the following false representations is attached as **Exhibit C**:

> a.     The very name "Consumer Law Protection" leads consumers to believe that CLP has legal knowledge, expertise, and operates as a law firm;
>
> b.     The home page for www.consumerlawprotection.com states "Your rights are valuable, Let us protect them" and list various types of legal cases followed the statement "Legal Practice Areas";
>
> c.     The home page for www.consumerlawprotection.com also states "[n]o matter what type of legal support you're looking for, we have the resources and expertise to help," and then directs the viewer to the "About Us" page;
>
> d.     The home page for www.consumerlawprotection.com further contains a disclaimer that "[t]he choice of a lawyer is an important decision and should not

be based solely upon advertisements," which is a common statement made by attorney advertisements.

e.      CLP's "About Us" page then contains information under the heading "About the Firm," followed by language that could only be legitimately found on a law firm's website, such as "CLP approaches each case with the same goal in mind - build a solid, factually-evidenced case that will either facilitate a favorable settlement for the client, or that will prevail at trial,"" "CLP will zealously advocate on your behalf, and more importantly, will earn your trust for future matters," and "[i]n serving clients, our attorneys focus on four core areas of expertise: Debt Collection Practices, Contract Advisement, Credit Repair, Fraud/Misrepresentation."

61.     CLP also maintains a Facebook page where the entity is listed as "Lawyer & Law Firm."

62.     These statements on CLP's website are false and misleading as they give the false impression that CLP is a law firm that employs lawyers. But CLP's contracts state: "Owner understands that Consumer law may use a professional title company and legal service from licensed attorneys, however, *Consumer Law is not a law firm and therefore, cannot offer legal advice*. Similarly, Consumer Law makes no representations, and *does not and cannot advise Owner regarding, tax matters or the implications of Your Timeshare or estate Interest*." (emphasis added). A true and correct copy of a sample CLP contract is attached hereto as **Exhibit D**.

63.     Similarly, the RCG Defendants tell timeshare owners the following, falsely implying that they have a process to legitimately exit, terminate, or cancel timeshare ownership when no such process exists, *see* Composite Ex. A:

a.      RCG has "found a way to exploit a clause in your contract with the resort company to force them to let you out of the contract and return your money";

b.      RCG "guarantees that your timeshare and or your timeshare mortgage contract will be cancelled within 18 months of full payment of fee or the client will receive 100% of all funds paid to Resort Consulting Group back."

### b.     In-Person Sales Presentations

64.     The TPE Defendants conduct much of their sales activity through in-person presentations to Bluegreen Owners, which are conducted using scripts and standardized presentations.

65.     The TPE Defendants have teams of employees or agents (often called "consultants") who travel the country to make sales presentations to timeshare owners.

66.     The presentations typically begin in a speaker-audience setting and end with one-on-one pitches during which the consultants pressure individual Bluegreen Owners to procure the advertised "cancellation" or "transfer" services.

67.     The consultants for these TPE Defendants use a variety of tricks to deceive Bluegreen Owners into believing that a company such as theirs can actually and legitimately cancel or transfer a Timeshare Contract, including, of course, the basic misrepresentation that a company such as theirs can actually and legitimately cancel or transfer a Timeshare Contract.

68.     By example, Square One falsely claims that they are "watchdogs" for American Resort Development Association ("ARDA"), an industry trade association that promotes the growth and development of the timeshare industry.

69.     Square One does not have any affiliation with ARDA and has never worked on behalf of ARDA.

70.     Square One has told consumers that Square One is affiliated with ARDA.

71.     Square One has told consumers that Square One works on behalf of ARDA.

72.     ARDA issued a Consumer Alert noting that Square One "uses <u>false and misleading information</u> to pressure consumers into purchasing timesshare exit" services and that Square One is "in **NO WAY** affiliated with ARDA." A copy of this Consumer Alert is attached hereto as **Exhibit E**.

73.     Later, after ARDA very publicly stated it had no connection to Square One, the principals of Square One and/or CLP formed CRC as a Missouri non-profit to give them the veil of legitimacy.

74.     Square One and CLP tell timeshare owners that their exit services are "certified" or "accredited" by CRC which is an "independent advocacy organization." In reality, however, CRC does not conduct any certification or accreditation process, and CRC has not undergone any evaluation of any timeshare exit companies other than the ones that it recommends and with which it shares common ownership.

75.     CRC's website claims that CLP has been "completely transparent" with CRC since 2005; however, this statement is literally false because neither CRC nor CLP even existed prior to 2019.

76.     CRC purports to operate as an independent, not for profit organization which accredits timeshare exit programs; in reality, CRC is merely a shill for the other Defendants' services.

77.     Square One and CLP also tell timeshare owners that all timeshare transactions are filed with CRC and can be obtained on the timeshare owners' authorization, and that the CRC was able to obtain a cancellation or termination offer from their timeshare developer that had previously closed. This statement is literally false and deceptive and is intended to hide the fact that Square One and CLP actually obtain Bluegreen Owners' information by pulling credit reports (detailed below).

78.     The fees charged by the TPE Defendants at the sales presentations are not representative of any actual work to be performed, but are rather based upon what the consultant can convince the timeshare owner to pay and the credit limits available to the timeshare owner.

79.     The TPE Defendants, through their consultants, inflate the cost of their so-called cancellation services by including exorbitant attorney's fees in their cost calculations, even though the actual fees they divert to the lawyers are a fraction of what the TPE Defendants receive.

80.     Finally, the TPE Defendants usually offer their prospective customers the option of paying with instantly-approved credit card accounts. The amount charged to the timeshare owner often depends on the TPE Defendants ability to complete multiple credit applications on-site and run up charges on these new lines of credit. These transactions are difficult to challenge when and if the Bluegreen Owners eventually discover the fraudulent outcome.

### c.   Telemarketing

81.   The TPE Defendants promote and advertise their services through telemarketing efforts, as well.

82.   Often the purpose of these telemarketing efforts is to convince Bluegreen Owners to attend an upcoming, nearby presentation.

83.   For example, the TPE Defendants will call timeshare owners, including Bluegreen Owners, offering invitations to nearby presentations with a free meal.  The telemarketers falsely state, based on their predetermined script, that owners who attend will learn how to get rid of their timeshare interests.

84.   Invitations or not, each TPE Defendant has at some point operated a call center itself, contracted with another marketing entity, or pursued some variation of telemarketing to solicit Bluegreen Owners with the types of false statements described above.

### d.   Direct Mail Advertising

85.   As with the telemarketing efforts, the TPE Defendants (or their agents) have mailed misleading advertisements to Bluegreen Owners.

86.   These mailers contain false and misleading statements, including claims that the TPE Defendants can "recover 100% of your timeshare's full purchase price!"

87.   A copy of the various mailers used by Square One, CLP, and CRC, which are extraordinarily similar in both substance and layout, are attached as **Composite Exhibit F.**

88.   The mailers sent by the TPE Defendants also offer money-back guarantees in order to deceive Bluegreen Owners into believing that their services are legitimate and proven.

89.     All of the Defendants have engaged in direct mail marketing, either directly themselves or through a marketing entity, to solicit Bluegreen Owners with the types of false statements described above.

90.     Bluegreen Owners who respond to Square One, CLP, or CRC's mailers are scheduled to attend in-person sales meetings through a call center operated by PRG. PRG's call center is utilized by other Defendants for sales and marketing purpose, including the direct solicitation of timeshare owners, including Bluegreen Owners.

91.     The false advertisements described above are not puffery. Thousands of consumers have fallen prey to Defendants' false and/or deceptively misleading advertisements and have retained Defendants to render Defendants' illusory services.

92.     In fact, at least one Defendant to this action, Square One, has acknowledged in court filings the falsity of Defendants' advertising.

93.     On September 17, 2019, Square One sued CLS, PTG, Montgomery Law, and M&N Law alleging fraud, among other claims, as a result of these Defendants' false representations "that they would assist and facilitate timeshare exits."  A copy of this lawsuit is attached hereto as **Exhibit G**.  Thus, Square One knows that the advertisements made by Defendants are false and/or misleading.

94.     The advertisements described in paragraphs 6, 9, 22, 43-45, 49-51, 56-58, 67-74, 83, 86-89 may be collectively referred to hereinafter as the "Square One False Advertisements."

95.     The advertisements described above in paragraphs 6, 8, 22, 49-51, 53-54, 67, 83-84, 86 may be collectively referred to hereinafter as the "Hemingway False Advertisements."

96.     The advertisements described above in paragraphs 6, 10, 22, 49-51, 63, 83-84 may be collectively referred to hereinafter as the "RCG False Advertisements."

- 23 -

97.     Consumers have paid Defendants thousands or tens of thousands of dollars each for Defendants' "guaranteed," "safe," "proven," and "effective" "process," only to go into default and have their timeshare interests terminated for non-payment.  No rational consumer would pay such sums of monies to a third-party if they were aware that the advertised 'process' was simply the consumer going into default as a consequence of stopping payments.

98.     Defendants' false and misleading advertisements cause direct harm to Bluegreen in that these false and misleading advertisements misrepresent Defendants' services.

99.     Defendants exist for the sole purpose of interfering in Bluegreen's Timeshare Contracts with the Bluegreen Owners.  Because Bluegreen Owners can be either a customer of Defendants, or a customer of Bluegreen, but not both, they are competitors and there is a direct relationship between Defendants false and/or deceptively misleading advertising and harm to Bluegreen in that the false and misleading advertisements are solely designed to induce Bluegreen Owners into retaining Defendants, who then immediately instruct those Bluegreen Owners to cease making payments to Bluegreen.

## IV.     Personal Liability of the Individual Defendants

97.     Historically, once an exit company is shut down via court intervention, a new exit company with the same principals is created and put in action.

98.     Therefore, it is imperative that the individual Defendants, LouAnn Reed and George Reed—the orchestraters and masterminds of the scheme described herein—be held individually liable for the unlawful conduct alleged herein and thereby prevented from opening new entities to conduct the same or a similar scam. *See, e.g., Orange Lake Country Club, Inc. v. Castle Law Group, P.C.*, No. 6:17-cv-1044-0rl-31DCI, 2018 WL 1535719, at *5 (M.D. Fla. Mar. 29, 2018) ("[A]ccording to the allegations of the Third Amended Complaint, Austin is one of the

'masterminds' of the multifaceted deceptive advertising scheme described in Count IQ. For present purposes, that is sufficient to state a claim against him.").

99.     George Reed and LouAnn Reed own, control, and operate Defendants Square One, SOHG, CLP, CLP Lawyers, CRC, and PRG. George Reed and LouAnn Reed are individually liable due to their direct participation in the improper conduct described herein. *See, e.g., Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1288 (M.D. Fla. 2009) ("It is certainly true that individual liability can exist if the three factors necessary to pierce the corporate veil are established. It is not necessary to pierce the corporate veil, however, if an individual is a direct participant in the alleged improper conduct.").

100.     George Reed and LouAnn Reed utilize these entities to implement their unlawful timeshare exit scheme. By dividing the various elements of their scheme up among the several different Defendant entities, George Reed and LouAnn Reed attempt to disguise the integrated nature of their scheme. In this manner, George Reed and LouAnn Reed make it appear as if these Defendant entities are a group of unrelated companies which merely refer one another business when in reality, each are merely an alter ego of George Reed and LouAnn Reed which exist for the sole purpose of perpetuating their unlawful timeshare exit scheme.

101.     Prior to the filing of this lawsuit in late 2019, George Reed and LouAnn Reed primarily operated their timeshare exit scheme through Square One, which was incorporated back in 2005. Both George and LouAnn Reed are Directors of Square One, and LouAnn Reed is listed as Square One's President and Secretary.

102.     Near the time Plaintiffs originally filed this lawsuit against Square One, George Reed and LouAnn Reed fragmented Square One's operations into several newly formed entities, including CLP (formed July 2019), PRG and CLP Lawyers (both formed on the same day in

September 2019), and CRC (formed shortly thereafter in April 2020).

103.    Defendants George and LouAnn Reed actively and knowingly cause the false advertising by the above Defendants. They direct, control, ratify, authorize, personally participate in, and/or are the moving forces behind the false and misleading advertising alleged herein for those Defendants.

104.    In fact, from 2018 through the present date, LouAnn Reed, either individually or though her attorneys, have been in a continuous dispute with the Better Business Bureau over advertising conducted by Square One and the other entities that are Defendants in this case. True and correct copies of the correspondence are attached as **Composite Exhibit H**.

105.    While George Reed was formerly listed on Square One's corporate documents, he was abruptly removed in 2012 following a felony conviction. Despite George Reed's removal from the corporate documents, he remains integrally involved in the false advertising and deceptive trade practices alleged herein.

106.    Therefore, more than just being officers and managers of the above Defendants, George and LouAnn Reed directly participate in the interference of Bluegreen Owners' Timeshare Contracts.

107.    Pettit and Stracke are in similar positions with respect to RCG. RCG is controlled and operated by Stracke and it appears that Pettit, its founder, also remains involved in its operation.

108.    RCG was formed in 2007 and incorporated in 2016 by Pettit. Pettit served as RCG's registered agent until late 2019/early 2020 and has directly solicited owners to further the timeshare exit scheme discussed here. Stracke, a former sales representative for another timeshare company, is identified in filings with the Missouri Secretary of State as an RCG owner

and as RCG's registered agent as of late 2019/early 2020. True and correct copies of RCG's Articles of Organization, Certificate of Good Standing, and Statement of Change of Registered Agent and/or Registered Office are attached as **Composite Exhibit I**; *see also* Composite Ex. A (RCG website, About Us page and solicitation letter sent by Pettit to timeshare owner on 8/21/2020).

### V. Alter Ego Liability

109. Even beyond their direct participation in the conduct alleged herein, George Reed and LouAnn Reed dominated and controlled Defendants Square One, SOHG, CLP, CLP Lawyers, CRC, and PRG to the extent that their independent existence was non-existent, and their purported corporate forms were used for an improper purpose, that is, to harm Bluegreen and consumers in perpetuating their scheme.

110. George Reed and LouAnn Reed further failed to observe the corporate formalities between the Defendant entities and used the corporate form and purported corporate formalities between the entities solely to avoid liability. As such, George Reed and LouAnn Reed each serve as the alter egos for these Defendant entities, and vice versa, and the corporate veil should be pierced to hold George Reed and LouAnn Reed each individually liable for the conduct of each of the Defendant entities. *See, e.g., Sunoptic Techs., LLC v. Integra Luxtec, Inc.*, No. 3:08-CV-878-J-16JRK, 2009 WL 722320, at *2 (M.D. Fla. Mar. 18, 2009) ("Sunoptic seeks to pierce Coherent's corporate veil because Coherent was merely an alter ego to protect Levey from individual liability. To support a claim to pierce the corporate veil, Sunoptic must allege that Levey dominated and controlled Coherent to such an extent that the corporation's independent existence was in fact non-existent, that the corporate form was used fraudulently or for an improper purpose, and that fraudulent or improper use of the corporate form caused injury.").

111.    In an effort to obfuscate their activities, the Defendants have developed an intricate web of deceit through the creation of interrelated entities that are all run from the same locations, by the same people, for the same common purpose of effectuating the fraudulent scheme alleged herein. Square One, SOHG, CLP, CLP Lawyers, CRC, and PRG are each alter egos of one another, and the entanglement of these entities is well-documented.

112.    SOHG was formed on October 18, 2018 as a Colorado corporation with a principal place of business at 1610 Des Peres Rd., Suite 150, St. Louis, Missouri 63131 – the same location as Square One's principal place of business. Moreover, direct mailing advertisements sent out by Square One reflect that they were created and/or copyrighted by SOHG. Finally, owners that attend Square One presentations and retain Square One's services actually have signed contracts with SOHG-not Square One.

113.    As such, there appears to be no meaningful distinction between Square One and SOHG, and the companies are disregarding corporate formalities. SOHG filed for dissolution with the Colorado Secretary of State on November 2, 2020. To the extent other Defendants have continued SOHG's contracts with timeshare owners, they are liable as successors to SOHG's contracts.

114.    With regard to the other entity Defendants, on July 7, 2020, the Better Business Bureau issued a report to consumers titled "Consumers Tell BBB They Lost Thousands of Dollars to Timeshare Exit Company Square One Development Group Inc.," alerting them not only to Square One's and CLP's deceptive practices, but also stating that Square One, CLP, and CRC were working in concert with shared employees and operations. A true and correct copy of the BBB report is attached hereto as **Exhibit J**.

115.    On December 15, 2020, consumers George Murchek and Nancy Murchek filed a

lawsuit against Square One, CLP, and CRC, as well as employees/officers Kevin Lelemi and Jeff Ward. In their allegations, the Murchecks allege based on their experience that "Consumer Law, Square One, and Consumer Rights are so entangled that it is impossible to tell the difference between the three companies and that Consumer law is an alter ego for Square One and Consumer Rights and vice-versa." A true and correct copy of the Murchek's Complaint is attached hereto as **Exhibit K**.

116.    CLP Lawyers has listed its principal place of business as the same address as Square One. For example, on its Registration of Fictitious Name filed with the Missouri Secretary of State, CLP Lawyers lists the same physical address as Square One at 1610 Des Peres Rd, St. Louis, Missouri 63131.

117.    Square One and CLP Lawyers also share common employees. This includes attorney Michael Sokolik, Esq., who has appeared in this action as Square One's in-house counsel, but who is also listed as a lawyer employed by CLP Lawyers as "Of Counsel." A true and correct copy of a CLP Lawyers letter listing Mr. Sokolik's affiliation is attached hereto as **Exhibit L**.

118.    CRC is a non-profit organized by the officers and employees of Square One, CLP, and CLP Lawyers. CRC's registration with the Missouri Secretary of State states that documents should be returned to Phillip Ruth, who is the same "Phil" listed in the Murchek's Complaint (*see* Ex. K, p. 14), who purports to be an employee of CLP.

119.    Despite listing 3636 Geyer Rd., Saint Louis, Missouri 63127 as its address on its website, CRC has previously sent out mailer solicitations that list its address as 8600 Daniel Dunklin Blvd., Pevely, MO 63070, which is the same address as CLP and CLP Lawyers. The mailer solicitation that CRC sends out is virtually identical to the ones utilized by Square One

and CLP. *See* Composite Ex. F.

120.    CRC also maintains a website that previously stated that CRC only recommends CLP and VOI Consulting Group (another entity associated with the Defendants in this case) as the preferred exit companies. The obvious purpose of CRC is to give the false impression that Square One, CLP, and/or CLP Lawyers have some independent validation.

121.    On its webpage, CRC has also claimed that it has extended accreditation to CLP because it has been "completely transparent with us since 2005."

122.    Since neither CRC nor CLP existed prior to 2019, CRC's claim is clearly not possible. However, corporate records indicate that Square One was incorporated in 2005; accordingly, CRC's reference to a 15-year old relationship with CLP is clear indication that both are actually mere alter-egos or extensions of Square One itself.

123.    Finally, like the other entities, PRG similarly appears to lack any true corporate independence. PRG is the owner of the property located at 8600 Daniel Dunklin Blvd., Pevely, Missouri 63070, where PRG also operates its call center. PRG was simultaneously formed and is concurrently owned by the same individual(s) as Square One, SOHG, CLP, CLP Lawyers, and CRC, and appears to serve no purpose other than to operate the call center aspect of the Defendants' overall scheme. Upon information and belief, PRG shares employees, funds, and overhead with these other Defendants.

124.    As such, Square One, SOHG, CLP, CLP Lawyers, CRC, and PRG are each alter egos of one another and of George and LouAnn Reed operating in unison for the purpose of effectuating the same common scheme, such that the conduct of any one of them is attributable to each of the others.

125.    Defendants ongoing conniving work in furtherance of this unlawful scheme, even

as of the date of this filing, cannot be negated. Indeed, other entities that may be related to these Defendants and may be acting in furtherance of the scheme also continue to be formed and have recently been uncovered, but are not yet named as Defendants as the facts as to these entities are not yet fully developed, including without limitation, Square One Group, LLC, Kosi Travel Co. LLC, Square One Management, LLC, Square One Corporate Offices, LLC, Square One Logistics, LLC, Square One Transport, LLC, Square One Pevely, LLC, Square One Bourbon, LLC, and Whiskey Dix Big Truck Repair, LLC.

## VI.     Bluegreen's right to injunctive relief.

126.     Defendants' solicitation of Bluegreen Owners using false and misleading advertising and their subsequent instruction to and/or persuasion of the Bluegreen Owners to stop making payments on the Timeshare Contracts, including all mortgage, maintenance, and club dues associated with their timeshares, regardless of whether any valid legal basis exists for the cancellation with Bluegreen, is harming Bluegreen.

127.     Defendants continue to engage and intend to further engage in the unlawful conduct described above.

128.     Defendants' actions present an immediate threat of irreparable harm to Bluegreen, and Bluegreen will suffer irreparable harm if Defendants, and their agents, affiliated companies or entities, representatives and employees, are not enjoined from this conduct.

129.     The threat of irreparable harm is continuing because Defendants currently engage in an ongoing business whereby they solicit Bluegreen Owners using the false and misleading advertising outlined above; and then convince the Bluegreen Owners to immediately stop paying.

130.     Non-defaulting Bluegreen Owners are also damaged because the non-payment of club dues and maintenance fees by the defaulting Bluegreen Owners force the non-defaulting Bluegreen Owners to incur higher fees/payments as a result of the deficiencies caused by Defendants' ongoing actions.

131.     Bluegreen will imminently have thousands of dollars in delinquent mortgage payments owed to them and will be forced to expend resources to recoup these monies to no end as Defendants refuse to cease and desist from this tortious conduct.

132.     Bluegreen has no adequate remedy at law as damages will not address the harm Bluegreen will suffer if Defendants are permitted to continue with this tortious conduct.

133.     The injury and potential harm caused by Defendants' intentional inference with Bluegreen's relationships outweigh the harm, if any, that an injunction would cause to Defendants.

134.     The issuance of the requested injunction will serve the public interest by protecting Bluegreen's legitimate business interests and the interests of the Bluegreen Owners, and by restraining the unlawful, disruptive and tortious actions committed by Defendants.

135.     Moreover, Bluegreen has a right to injunctive relief under both the Lanham Act and the Florida Deceptive and Unfair Trade Practices Act.

**VII.    Parties, Jurisdiction, and Venue.**

**a. The Plaintiffs**

136.     Plaintiff, Bluegreen Vacations Corporation ("BVC"), is a Florida corporation organized with its principal place of business located at 4960 Conference Way North, Suite 100, Boca Raton, FL 33431.

137.     Plaintiff, Bluegreen Vacations Unlimited, Inc. ("BVU"), is a Florida corporation with its principal place of business located at 4960 Conference Way North, Suite 100, Boca Raton, FL 33431.  BVU is a wholly owned subsidiary of BVC.

**b. The Defendants**

138.     Montgomery Law is a limited liability company organized and existing under the laws of the State of Missouri with its registered business address and registered agent, M. Scott Montgomery, at 901 E Saint Louis Street, Suite 1200, Springfield, Missouri 65806. Montgomery Law also maintains its principal place of business at 435 E Walnut Street, Springfield, Missouri 65806.

139.     M&N Law is a limited liability company organized and existing under the laws of the State of Missouri with its registered business address and registered agent, M. Scott Montgomery, both located at 901 E Saint Louis Street, Suite 1200, Springfield, Missouri 65806. M&N Law further maintains its principal office at 435 E Walnut Street, Springfield, Missouri 65806.

140.     Montgomery is an individual and resident of the State of Missouri who can be found at 435 E Walnut Street, Springfield, Missouri 65806 and is otherwise *sui juris*.

141.     Newcomb is an individual and resident of the State of Missouri who can be found at 901 E Saint Louis Street, Suite 1201, Springfield, Missouri 65806 and is otherwise *sui juris*.

142.     Square One is a corporation organized and existing under the law of the State of Missouri with its principal place of business located at 1610 Des Peres Road, Suite 150, Saint Louis, Missouri 63131, and its registered agent, Timothy R. McFadden, located at 44 Meadowbrook CC Estates, Ballwin, Missouri 63011.

143.    CLS is a corporation organized and existing under the laws of the State of Missouri with its principal place of business and registered agent, Donnelly Snellen, both located at 6906 Route M, Jefferson City, Missouri 65101.

144.    CLS operates under the fictitious name: 'Principal Transfer Group', which is registered with the Missouri Secretary of State twice.  According to these active fictitious name registrations, CLS maintains or has maintained mailing addresses at 708 Missouri Boulevard, Jefferson City, Missouri 65101 and 901 E Saint Louis Street, Suite 1201, Springfield, Missouri 65806, the latter of which is a location shared with the Montgomery Law Defendants.

145.    In addition to the two fictitious name filings for 'Principal Transfer Group, PTG is itself a limited liability company organized and existing under the laws of the State of Missouri with a registered address and agent, Donald M. Brown, both located at 111 W. Broadway, Bolivar, Missouri 65613.  PTG maintains a principal place of business at 901 E Saint Louis Street, Suite 1201, Springfield, Missouri 65806.

146.    PTG and CLS are alter-egos and affiliates for at least the following reasons:

a.      PTG shares its names with the fictitious names registered by CLS (*see* **Exhibit M** – Registration of Fictitious Name by CLS filed 1/4/2018) (*see* **Exhibit N** – Registration of Fictitious Name by CLS filed 8/9/2018);

b.      they share the same address, for example, CLS registered CLS's two fictitious names as doing business at 901 E Saint Louis Street, Suite 1201, Springfield, MO 65806, while PTG also indicated in a statement filed with the Missouri Secretary of State that it is located at 901 E Saint Louis Street, Suite 1201, Springfield, Missouri 65806 (*see* **Exhibit O** – Statement of Change of Business Office Address);



c.     they share logos, for example, both CLS and PTG use the following logo:



d.     they share phone numbers, for example, CLS and PTG both utilize (417) 612-9500;

e.     they share websites, for example, both CLS and PTG utilize www.principaltransfergroup.com;

f.     CLS and PTG share common ownership and/or control; and

g.     CLS and PTG engage in common marketing and solicitation, and common business schemes, as more fully set forth herein.

In sum, there is no way to determine the difference between CLS and PTG – all three operate using identical names out of the same office, utilizing the same logos, phone numbers, and websites.

147.    Square One is related to Hemingway, CLS and PTG because Square One advertises, shares business with, and refers customers, including Bluegreen Owners, to Hemingway, CLS, and/or PTG.

148.    In referring timeshare owners to the Montgomery Law Defendants, Square One utilizes attorney referral forms which refer to PTG.

149.    Hemingway is an individual and resident of the State of Missouri.  Hemingway was formerly committed to the Missouri Department of Corrections and may presently be reached through, at least, his parole officer, Jennifer Kimberlin, at 2530 South Campbell, Suite H, Springfield, Missouri 65807.

150.    SOHG is a corporation organized and existing under the laws of the State of Colorado with a principal place of business located at 1610 Des Peres Road, Suite 150, Saint Louis, Missouri 63131.

151.    CLP is a limited liability company organized and existing under the laws of the State of Missouri with a principal place of business listed on its website as 8600 Daniel Dunklin Blvd., Pevely, Missouri 63070.

152.    CLP Lawyers is a limited liability company organized and existing under the laws of the State of Missouri with a principal place of business located at either 1610 Des Peres Rd., Saint Louis, Missouri 63131 or 8600 Daniel Dunklin Blvd., Pevely, Missouri 63070.

153.    CRC is a not-for-profit corporation organized and existing under the laws of the State of Missouri with a principal place of business located at either 3636 Geyer Rd., Saint Louis, Missouri 63127 or 8600 Daniel Dunklin Blvd., Pevely, Missouri 63070.

154.    PRG is a Missouri limited liability company organized and existing under the laws of the State of Missouri with a principal place of business located at either 8600 Daniel Dunklin Blvd., Pevely, Missouri 63070, as listed on its internet advertisements, or at 1610 Des Peres Rd., Saint Louis, Missouri 63131, as listed with the Jefferson County Missouri Property Assessor.

155.     LouAnn Reed and George Reed are citizens of the state of Missouri and reside at 33 Greenview Drive, Defiance, Missouri 63341.

156.     RCG is a Missouri limited liability company organized and existing under the laws of the State of Missouri with a principal place of business located at either 730 West Deerfield St., Van Buren, MO, 63965, as identified in its filings with the Missouri's Secretary of State, or 509 Main St., HC2 2198, Van Buren, MO 63965, as listed on its website.  RCG's founder, Pettit, is a citizen of the state of Missouri and resides at 1768 Union Ridge Dr., Clever, MO 65631.  RCG's current registered agent and owner, Stracke, is a citizen of the state of Missouri and resides at 730 W. Deerfield St., Springfield, MO 65807.

### c.  Subject Matter Jurisdiction

157.     This Court has subject matter jurisdiction over the claims sounding in the Lanham Act alleged herein pursuant to 28 U.S.C. §§ 1331 and 1338.  This Court has subject matter jurisdiction over the claims sounding in state law alleged herein pursuant to 28 U.S.C. § 1367 as the state law claims are so related to the Lanham Act claims that they form part of the same case or controversy.

### d.  Personal Jurisdiction

158.     This Court has personal jurisdiction over the Defendants for the following reasons:

> a.      over all Defendants because their actions, as more fully described herein below, are directed at consumers across the country, including consumers in the state of Florida.  All Defendants operate websites that are freely accessible from Florida and target consumers in the State of Florida,

which involves, *inter* alia, the repeated transmission of files over the
Internet in, to, and out of the State of Florida;

b.    over all Defendants as they operate together and cause false demand
letters to be directed to Bluegreen in the State of Florida, indeed, all
actions of Defendants are designed to interfere with Bluegreen's business,
which involves the repeated use of the wires and mails by Defendants to
transmit correspondence and other items into the State of Florida;

c.    at least some of the Timeshare Contracts and Timeshare Owners at issue
in this civil action were entered into in Florida or are Florida residents;

d.    committing acts and torts which caused injury to Plaintiffs in Florida;

e.    Defendants have conducted "road shows" and other marketing in the State
of Florida which targeted Florida residents; and

f.    The Defendants have conspired together to harm Plaintiffs through the
commission of the tortious acts alleged herein.

159.    Moreover, because Defendants Square One, SOHG, CLP, CLP Lawyers, CRC,
and PRG are each alter egos of each other, with each corporate entity acting as the mere
instrumentality for the individual Defendants controlling them, and each Defendant mutually
participating in the conspiracy (*see* ¶ 233 regarding conspiracy exception as to Square One and
SOHG), they are each mutually subject to personal jurisdiction in this forum to the extent that
any of the Defendants is subject to jurisdiction; in other words, so long as the Court finds that
there is personal jurisdiction over at least one of the Defendants (which there is over each of
the Defendants in any event, as described above), then such jurisdiction extends to each of that
Defendant's coconspirators in this action. *See, e.g., United Techs. v. Mazer*, 556 F.3d 1260,

- 38 -

1281-82 (11th Cir. 2009) ("Florida courts have held that the state's long-arm statute can support personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida.").

160.    For the foregoing reasons, the Court has personal jurisdiction over all Defendants.

### e. <u>Venue</u>

161.    Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391 because, as described herein, a substantial part of the events giving rise to Plaintiffs' claims occurred in Florida, because the Defendants ultimately harm the consuming public and Bluegreen in Florida, and Defendants' conduct giving rise to the claims set forth herein occurred in this District.

### f. <u>Conditions Precedent, Attorneys' Fees</u>

162.    All conditions precedent to the bringing and maintenance of this action have been performed, were waived, would be futile if attempted, or have otherwise been satisfied or occurred.

163.    Bluegreen has retained the services of the undersigned lawyers to represent it in this matter and have obligated themselves to pay reasonable attorneys' fees, which fees are recoverable against Defendants pursuant to 15 U.S.C. § 1117 and the Florida Deceptive and Unfair Trade Practices Act, and other statutes, as set forth in greater detail herein.

**VIII.   Causes of Action**

**COUNT I**
**Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)**
(against Hemingway, PTG and CLS)

164.   Bluegreen adopts and realleges paragraphs 1-8, 11-54, 59-67, 78-163 above as if fully set forth herein.

165.   This is an action for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1), which arises from the false and misleading advertisements made by or at the direction of Hemingway, PTG, and CLS regarding Defendants' own services.

166.   Hemingway, PTG, and CLS willfully, deliberately, and egregiously made false or misleading statements of fact in their commercial advertisements and intended to mislead consumers.

167.   These false and misleading advertisements include, but are not limited to, the Hemingway False Advertising described above. These statements, incorporated herein, were literally false, either on their face or by necessary implication, as set forth herein, or materially misleading.

168.   The Hemingway False Advertising described above were commercial speech made by a defendant acting in competition to Bluegreen by trying to interfere with Bluegreen's business relationships for the Defendants' own financial gain, for the purpose of influencing consumers to retain the Defendants' services, and were disseminated sufficiently to the timeshare owning public to constitute advertising or promotion within the timeshare industry.

169.   The Hemingway False Advertising either deceived or had the capacity to deceive a substantial segment of the consuming public.

- 40 -

170.   Hemingway, CLS, and PTG's deception is material, in that it is likely to influence the consumers' decisions whether to retain Defendants' services or to cease making payments to Bluegreen.

171.   The Defendants' advertised services affect interstate commerce.

172.   Hemingway, CLS, and PTG are operating as competitors to Bluegreen.  Once a Bluegreen Owner enters into an agreement with these Defendants, the sole purpose of that agreement is to cause that Bluegreen Owner to withdraw his or her business from Bluegreen, effectively converting that individual from a Bluegreen Owner to a customer of the Defendant.

173.   Bluegreen has been and continues to be injured as a result of these false and misleading statements.

174.   Pursuant to 15 U.S.C. § 1117, Bluegreen is entitled to recover (i) its actual damages sustained as a result of the false advertising, (ii) Defendants' profits resulting from their false advertising to Bluegreen Owners, and (iii) the costs of the action.

175.   Pursuant to 15 U.S.C. § 1116, Bluegreen seeks an injunction upon such terms as the Court may deem reasonable, to prevent further violations by Defendants of 15 U.S.C. 1125(a).

WHEREFORE, Bluegreen respectfully request the Court enter final judgment in their favor and against Hemingway, CLS, and PTG, jointly and severally, for damages, corrective advertising, and disgorgement of profits, together with interest thereon, an award of court costs, a determination that the instant civil action is an exceptional case and awarding Plaintiffs their attorneys' fees, entry of injunctive relief, and for such other and further relief as the Court deems appropriate. Bluegreen demands a permanent injunction be entered against Hemingway, CLS, and PTG, as well as their agents, representatives, employees, affiliates, prohibiting the

publishing of false and misleading statements in advertising, including but not limited to their websites or other electronic or print media or materials, advertising any ability to cancel or exit Bluegreen Owners' from their Timeshare Contracts.

**COUNT II**
**Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)**
(against Square One, SOHG, CLP, CRC, George Reed, and LouAnn Reed)

176.    Bluegreen adopts and realleges paragraphs 1-7, 9, 11-37, 43-51, 55-62, 64-163 above as if fully set forth herein.

177.    This is an action for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1) against Defendants Square One, SOHG, CLP, CRC, George Reed, and LouAnn Reed. The action arises from the false and misleading advertisements made by or at the direction of these Defendants regarding Defendants' own services.

178.    Square One, SOHG, CLP, CRC, George Reed, and LouAnn Reed willfully, deliberately, and egregiously made false or misleading statements of fact in their commercial advertisements and intended to mislead consumers.

179.    These false and misleading advertisements include, but are not limited to, the Square One False Advertising described above. These statements, incorporated herein, were literally false, either on their face or by necessary implication, as set forth herein, or materially misleading.

180.    The Square One False Advertising described above were commercial speech made by a defendant acting in competition to Bluegreen by trying to interfere with Bluegreen's business relationships for the Defendants' own financial gain, for the purpose of influencing

consumers to retain the Defendants' services, and were disseminated sufficiently to the timeshare owning public to constitute advertising or promotion within the timeshare industry.

181.   The Square One False Advertising either deceived or had the capacity to deceive a substantial segment of the consuming public.

182.   These Defendants' deception is material, in that it is likely to influence the consumers' decisions whether to retain Defendants' services or to cease making payments to Bluegreen.

183.   The Defendants' advertised services affect interstate commerce.

184.   The Defendants operate as a competitor to Bluegreen.  Once a Bluegreen Owner enters into an agreement with these Defendants, the sole purpose of that agreement is to cause that Bluegreen Owner to withdraw his or her business from Bluegreen, effectively converting that individual from a Bluegreen Owner to a customer of the Defendant.

185.   Bluegreen has been and continues to be injured as a result of these false and misleading statements.

186.   To the extent that the individual Defendants George and LouAnn Reed are the masterminds and orchestraters of the scheme and the other Defendants are all alter egos of one another, the Defendants are each jointly and severally liable for the advertisements identified herein and are properly named as Defendants in this Count II.

187.   Pursuant to 15 U.S.C. § 1117, Bluegreen is entitled to recover (i) its actual damages sustained as a result of the false advertising, (ii) Defendants' profits resulting from their false advertising to Bluegreen Owners, and (iii) the costs of the action.

188.    Pursuant to 15 U.S.C. § 1116, Bluegreen seeks an injunction upon such terms as the Court may deem reasonable, to prevent further violations by Defendants of 15 U.S.C. 1125(a).

WHEREFORE, Bluegreen respectfully request the Court enter final judgment in their favor and against Square One, for damages, corrective advertising, and disgorgement of profits, together with interest thereon, an award of court costs, a determination that the instant civil action is an exceptional case and awarding Bluegreen their attorneys' fees, entry of injunctive relief, and for such other and further relief as the Court deems appropriate. Bluegreen demands a permanent injunction be entered against Square One, as well as their agents, representatives, owners, employees, and affiliates, prohibiting the publishing of false and misleading statements in advertising, including but not limited to Square One's websites or other electronic or print media or materials, advertising any ability to cancel or exit Bluegreen Owners' from their Timeshare Contracts.

## COUNT III
### Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)
(against the RCG Defendants)

189.    Bluegreen adopts and realleges paragraphs 1-7, 10-37, 46-51, 61-63, 78-79, 81, 83-85, 126-163 above as if fully set forth herein.

190.    This is an action for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1), which arises from the false and misleading advertisements made by or at the direction of the RCG Defendants regarding RCG's own services.

191.    The RCG Defendants willfully, deliberately, and egregiously made false or misleading statements of fact in their commercial advertisements and intended to mislead consumers.

- 44 -

192.     These false and misleading advertisements include, but are not limited to, the RCG False Advertising described above. These statements, incorporated herein, were literally false, either on their face or by necessary implication, as set forth herein, or materially misleading.

193.     The RCG False Advertising described above were commercial speech made by a defendant acting in competition to Bluegreen by trying to interfere with Bluegreen's business relationships for the Defendants' own financial gain, for the purpose of influencing consumers to retain the Defendants' services, and were disseminated sufficiently to the timeshare owning public to constitute advertising or promotion within the timeshare industry.

194.     The RCG False Advertising either deceived or had the capacity to deceive a substantial segment of the consuming public.

195.     The RCG Defendants' deception is material, in that it is likely to influence the consumers' decisions whether to retain Defendants' services or to cease making payments to Bluegreen.

196.     The Defendants' advertised services affect interstate commerce.

197.     The RCG Defendants operate as a competitor to Bluegreen.  Once a Bluegreen Owner enters into an agreement with these Defendants, the sole purpose of that agreement is to cause that Bluegreen Owner to withdraw his or her business from Bluegreen, effectively converting that individual from a Bluegreen Owner to a customer of the Defendant.

198.     Bluegreen has been and continues to be injured as a result of these false and misleading statements.

199.    Pursuant to 15 U.S.C. § 1117, Bluegreen is entitled to recover (i) its actual damages sustained as a result of the false advertising, (ii) Defendants' profits resulting from their false advertising to Bluegreen Owners, and (iii) the costs of the action.

200.    Pursuant to 15 U.S.C. § 1116, Bluegreen seeks an injunction upon such terms as the Court may deem reasonable, to prevent further violations by the RCG Defendants of 15 U.S.C. 1125(a).

WHEREFORE, Bluegreen respectfully request the Court enter final judgment in their favor and against the RCG Defendants, for damages, corrective advertising, and disgorgement of profits, together with interest thereon, an award of court costs, a determination that the instant civil action is an exceptional case and awarding Bluegreen their attorneys' fees, entry of injunctive relief, and for such other and further relief as the Court deems appropriate. Bluegreen demands a permanent injunction be entered against the RCG Defendants, as well as their agents, representatives, owners, employees, and affiliates, prohibiting the publishing of false and misleading statements in advertising, including but not limited to RCG's websites or other electronic or print media or materials, advertising any ability to cancel or exit Bluegreen Owners' from their Timeshare Contracts.

**COUNT IV**
**Contributory False Advertising in Violation of the Lanham Act, 15 U.S.C. §1125(a)(1)**
(against the Montgomery Law Defendants, CLP Lawyers, CRC, and PRG)

201.    Bluegreen adopts and realleges paragraphs 1-163 above as if fully set forth herein.

202.    This is an action for a contributory violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

203.    The TPE Defendants willfully, deliberately, and egregiously made false or misleading statements of fact in their commercial advertisements and intended to mislead

- 46 -

consumers.  The statements described above and incorporated herein were literally false, either on their face or by necessary implication, as set forth herein.

204.    Bluegreen has been and continues to be injured as a result of the TPE Defendants' false and misleading statements.

205.    The Montgomery Law Defendants, CLP Lawyers, CRC, and PRG have contributed and continue to contribute to the TPE Defendants' false advertising by knowingly inducing or causing the conduct, or by materially participating in it and/or accepting the benefits of it.

206.    The Montgomery Law Defendants, CLP Lawyers, CRC, and PRG explicitly or implicitly encourage the false advertising because they have agreed to accept the referral of consumers deceived by the false advertising.  If the Montgomery Law Defendants, CLP Lawyers, CRC, and PRG were not willing to accept those consumers as clients, the TPE Defendants could not advertise what they do.

207.    CRC explicitly or implicitly encourages the false advertising because it operates as a sham "accreditation" or "certification" that other Defendants use to give a false air of legitimacy to their advertisements and their advertised services. CRC serves no purpose other than to advance the other Defendants' false advertising.

208.    PRG sets appointments for Owners to attend the other Defendants' false advertising presentations, and in the course of doing so furthers and reiterates, the other Defendants' false and misleading representations to the Owners.

209.    The TPE Defendants' false advertisements are public, serious, and widespread, and the Montgomery Law Defendants, CLP Lawyers, CRC, and PRG have full knowledge of such advertising and condone it.

210.    More than that, the Montgomery Law Defendants, CLP Lawyers, CRC, and PRG financially gain from the false advertisements in the form of client referrals and fee splitting with the TPE Defendants.

211.    In other words, the business of the Montgomery Law Defendants, CLP Lawyers, CRC, and PRG derives much, if not all, of its revenue from the consumers solicited through the TPE Defendants' false advertising, more specifically, the Square One False Advertisements, the Hemingway False Advertisements, and the RCG False Advertisements.

212.    Pursuant to 15 U.S.C. § 1117, Bluegreen is entitled to recover (i) its actual damages sustained as a result of the false advertising by the TPE Defendants, (ii) the profits of the Montgomery Law Defendants, CLP Lawyers, CRC, and PRG resulting from the TPE Defendants' false advertising to Bluegreen Owners, and (iii) the costs of the action.

213.    Pursuant to 15 U.S.C. § 1116, Bluegreen seeks an injunction upon such terms as the Court may deem reasonable, to prevent further contributory violations by the Montgomery Law Defendants, CLP Lawyers, CRC, and PRG of 15 U.S.C. 1125(a).

WHEREFORE, Plaintiffs Bluegreen respectfully request the Court enter final judgment in their favor and against the Montgomery Law Defendants (jointly and severally), CLP Lawyers, CRC, and PRG, for damages, corrective advertising, and disgorgement of their profits, together with interest thereon, an award of court costs, a determination that the instant civil action is an exceptional case and awarding Bluegreen their attorneys' fees, entry of injunctive relief, and for such other and further relief as the Court deems appropriate. Bluegreen demand a permanent injunction be entered against the Montgomery Law Defendants, CLP Lawyers, CRC, and PRG, as well as their agents, representatives, employees, affiliates, prohibiting the Montgomery Law Defendants, CLP Lawyers, CRC, and PRG from further contributing to the

False and Misleading Advertising, including accepting any clients solicited by the TPE Defendants through the false advertising of an ability to cancel or exit Bluegreen Owners' from their Timeshare Contracts.

### COUNT V
### Tortious Interference with Contractual Relations
(against all Defendants)

214.    Bluegreen adopts and realleges paragraphs 1-163 above as if fully set forth herein.

215.    This is a cause of action for tortious interference with contractual relations.

216.    Bluegreen has contractual relationships with its Bluegreen Owners.

217.    The Defendants have actual, constructive, and/or specific knowledge of the contractual relationships between Bluegreen and the Bluegreen Owners. The very fact that Bluegreen has a business relationship with the Bluegreen Owners is the basis upon which the Defendants sought to establish a relationship with the Bluegreen Owners. Indeed, if it were not for the existence of the contractual relationships between Bluegreen and the Bluegreen Owners, the Defendants would have no reason to operate.

218.    The Defendants, as described hereinabove, have successfully solicited Bluegreen Owners and caused or induced them to breach and/or terminate their contractual relationships with Bluegreen.

219.    In particular, the Defendants have intentionally procured the breach of Bluegreen's contractual relationships by soliciting identifiable Bluegreen Owners[3] and persuading them to hire the Defendants to help "cancel" (in reality, breach) their Timeshare

---

[3] Certain specific Bluegreen Owners and Timeshare Contracts are identifiable. Due to the substantial volume and length of said documents it is not practical to attach all of them to this Complaint as they would make the Complaint likely thousands, if not tens-of-thousands of pages long. Bluegreen can provide the identities and documents in discovery. Moreover, Defendants are already aware of the identities of these Bluegreen Owners and Timeshare Contracts to the extent Defendants have sent Bluegreen letters related to these Bluegreen Owners and Timeshare Contracts.

Contracts. The Defendants also procure breaches by directly instructing Bluegreen Owners to stop paying their timeshare loans and maintenance fees and/or engaging in fraudulent transfers.

220.    If Bluegreen Owners knew the truth about the Defendants' illusory and fraudulent services or about how Defendants' actions would adversely impact them, they would not pay exorbitant fees to the Defendants nor unlawfully breach their Timeshare Contracts.

221.    The Defendants have utilized improper, fraudulent and/or illegal means to interfere with Plaintiffs' contractual relations.

222.    The Defendants' actions were done with an improper motive and not made in good faith, but rather were made with the knowledge and predominant purpose to injure Bluegreen or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from the Defendants' actions and without reasonable grounds for the Defendants to believe that their actions were justified and proper.

223.    As a direct and proximate result of the Defendants' intentional misconduct, Bluegreen Owners have ceased payments to Bluegreen, breached their Timeshare Contracts, and/or have otherwise baselessly sought to terminate their contractual relationships with Bluegreen, before the expiration of the terms of those contracts.  These defaults, terminations, and attempted terminations, also interfere with Bluegreen's ability to enter into subsequent transactions with those same Bluegreen Owners.

224.    The Defendants did not and do not have any justification or privilege in procuring the breach of such contractual relationships, as the Defendants are strangers to the contractual relationships between Bluegreen and its Owners, and their interference with Bluegreen's business is willful and malicious.

225.     Furthermore, the Defendants profit greatly by accepting and sharing significant fees from Bluegreen Owners and then performing little or no actual legal work on their behalf to "cancel" their timeshare contracts.    The Defendants are not privileged to interfere with Bluegreen's contractual relationships because the Defendants act in their own personal interests and without an honest belief that the strategy of defaulting on the Timeshare Contracts is justified by the exorbitant fees received by them or even the best course of action to terminate the Timeshare Contract.

226.     The Defendants' across-the-board strategy to induce its clients to breach their Timeshare Contracts is not sound, individualized legal advice done in the course of representation of any clients, but rather an overall business decision of the law firm itself that is not privileged.

227.     As a direct and proximate result of the foregoing, Bluegreen has suffered damages.

228.     Bluegreen is entitled to damages against the Defendants jointly and severally.

229.     The Defendants' ongoing conduct has caused and, if not permanently enjoined, will continue to cause irreparable harm to Bluegreen in the disruption of customer and other contractual relations; therefore, Bluegreen does not have an adequate remedy at law.

230.     The Defendants' conduct is intentional and willful and entitles Bluegreen to an award of punitive damages.

WHEREFORE, Bluegreen respectfully requests the Court enter final judgment in their favor and against the Defendants, jointly and severally, for actual damages, together with interest thereon, punitive damages, an award of court costs, entry of injunctive relief, and for such other and further relief as the Court deems appropriate. Plaintiffs demand a permanent injunction be

entered against the Defendants and their agents, representatives, employees, and affiliates, prohibiting the Defendants from contacting Bluegreen Owners and/or otherwise interfering with Plaintiffs' contractual relationships with such Bluegreen Owners or engaging in other such similar conduct as determined by the Court.

## COUNT VI
### Civil Conspiracy to Commit Tortious Interference with Contractual Relations
(against all Defendants)

231.    Bluegreen adopts and realleges paragraphs 1-163 and 214-230 above as if fully set forth herein.

232.    This is a cause of action for civil conspiracy arising from Defendants' actions, conducted in concert, to tortiously interfere with Bluegreen's contractual relationships with Bluegreen Owners.

233.    With the exception of Square One and SOHG who had a parent-subsidiary relationship and as such could not be deemed to have conspired with each other, Defendants are otherwise parties to this civil conspiracy.  Defendants had a common design to interfere with Bluegreen's contractual relationships with Bluegreen Owners, each Defendant having the intent, and knowledge of the others' intent, to accomplish by concerted action unlawful purposes and/or lawful purposes by unlawful means.

234.    Defendants have committed various overt acts in furtherance of their conspiracy, including but not limited to, wrongfully soliciting Bluegreen Owners through false statements and misrepresentations regarding Defendants' advertised service, sharing and utilizing referral forms to transfer and refer Bluegreen Owners from the TPE Defendants to the Montgomery Law Defendants and/or CLP Lawyers, soliciting Bluegreen Owners at live presentations that

marketed the Montgomery Law Defendants, and by inducing Bluegreen Owners to stop making payments related to their Timeshare Contracts.

235.    Defendants have made agreements to perform separate aspects of this conspiracy, all in concert with each other, and to then divide the fees generated from the scheme among all Defendants.

236.    As a necessary component of facilitating their scheme, Defendants use shell companies as well as various banking and merchant accounts. Defendants' various financial accounts maliciously and purposefully act to hide their misconduct, and to divert and abscond with funds from Bluegreen Owners.

237.    Defendants, acting in concert, have particular effectiveness greater than their individual efforts in that the TPE Defendants (who are not themselves lawyers or a law firm) are able to advertise legal services outside the ethical standards that would otherwise govern the practice of law.  By doing so, the Montgomery Law Defendants and CLP Lawyers use the TPE Defendants to solicit clients in a manner that they themselves would be prohibited, while the TPE Defendants can enjoy the payment of legal fees that they would otherwise never receive.

238.    As a direct and proximate result of Defendants' civil conspiracy, Bluegreen Owners have unlawfully breached their Timeshare Contracts with Bluegreen.

239.    Defendants did not have any justification or privilege in procuring the breach of such Timeshare Contracts. As a direct and proximate result of the foregoing, Bluegreen suffered damages.

240.    Defendants are jointly and severally liable to Plaintiffs for damages.

241.    Defendants acted willfully and with malice in taking these actions.

242.    Defendants' conduct therefore entitles Plaintiffs to an award of punitive damages.

WHEREFORE, Plaintiffs request the Court enter final judgment in their favor and against Defendants, jointly and severally, for actual damages, together with interest thereon, punitive damages, an award of court costs, entry of injunctive relief, and for such other and further relief as the Court deems appropriate

**COUNT VII**
**Violations of Florida's Deceptive and Unfair Trade Practices Act**
(against all Defendants)

243.   Bluegreen adopts and realleges paragraphs 1-163 above as if fully set forth herein.

244.   This is a cause of action for damages and permanent injunctive relief under Section 501.211, Fla. Stat.

245.   Bluegreen is a legitimate business enterprise under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

246.   Bluegreen Owners are consumers for purposes of FDUTPA.

247.   Defendants are engaged in trade or commerce as those terms are defined by FDUTPA.

248.   Defendants are engaged in unconscionable, unfair, and deceptive acts or practices in violation of §501.204(1), Florida Statutes , including:

    i.   luring Bluegreen Owners to purchase illusory services;

    ii.   directly contacting Bluegreen Owners and/or prospective Bluegreen Owners and making false representations regarding Defendants' service;

    iii.   misleading Bluegreen Owners into believing that they will receive a guaranteed legal release from their Timeshare Contract, when in fact Defendants' conduct is designed to cause the unlawful breach of the Timeshare Contract;

- 54 -

iv.   advertising the ability to "cancel" a Timeshare Contract outside the statutory rescission period;

v.   offering a 100% guarantee;

vi.   advertising the ability to obtain a refund of monies paid under the Timeshare Contract;

vii.   directly and/or indirectly recommending, inducing, or otherwise engaging in conduct and actions which cause Bluegreen Owners to stop making payments related to their Timeshare Contract;

viii.   directly and/or indirectly misleading Bluegreen Owners to believe that defaulting on their obligations will not affect their credit;

ix.   directly and/or indirectly falsely claiming that Defendants can fix or prevent damage to Bluegreen Owners' credit;

x.   directly and/or indirectly causing Bluegreen Owners to default on their payment obligations to Bluegreen;

xi.   directly and/or indirectly entering Bluegreen Owners into legal services agreement without a proper legal consultation, without any prior contact with the lawyer, and with the majority of legal fees paid to non-lawyers;

xii.   misleading Bluegreen Owners into believing that they will receive actual legal representation;

xiii.   violating Rule 4-7.18(a) of the Rules Regulating the Florida Bar by directly soliciting Bluegreen Owners;

xiv.   violating Rule 4-7.17(b)-(c) of the Rules Regulating the Florida Bar by compensating the TPE Defendants for referrals; and

> xv.  violating Rule 4-5.4(a) of the Rules Regulating the Florida Bar by sharing
>
> legal fees with the TPE Defendants.

249.    Section 501.211(1), Fla. Stat., "permits a claim for injunctive relief by 'anyone aggrieved' by an unfair or deceptive act, which has occurred, is now occurring, or is likely to occur in the future." *Bluegreen Vacation Resorts, Inc. v. Timeshare Direct, Inc.*, 123 So.3d 1149, 1152 (Fla. 5th DCA 2012).

250.    Under Section 501.211(1), Fla. Stat., "anyone aggrieved" includes a broader class of complainants than merely consumers; the scope of the injunctive remedy is also greater than the actual damage remedy under § 510.211(2), Fla. Stat. *Id.*; *see also Kinger v. Weekly World News, Inc.*, 747 F. Supp. 1477, 1480 (S.D. Fla. 1990).

251.    Bluegreen is a party aggrieved by Defendants' violation of FDUTPA, Section 501.204(1), Fla. Stat.

252.    As a result of Defendants' actions, Bluegreen has suffered financial losses.

253.    Bluegreen's losses will increase unless Defendants are permanently enjoined from continuing their deceptive and unfair business practices.

254.    Bluegreen is entitled to recover its attorney's fees and costs from Defendants under Sections 501.2105 and 501.211, Fla. Stat.

WHEREFORE, Bluegreen respectfully requests the Court to enter injunctive relief against all Defendants, award Bluegreen their costs, including their reasonable attorney's fees, award Bluegreen its actual damages, and for such other and further relief as the Court deems appropriate.

Dated: September 30, 2021

/s/ Glennys Ortega Rubin
**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**MICHAEL J. QUINN, ESQ.**
Florida Bar No. 084587
mquinn@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile: (407) 849-7255

and

**ERIC C. CHRISTU, ESQ.**
Florida Bar No. 434647
Email: ecchristu@shutts.com
**JONATHAN P. HART, ESQ.**
Florida Bar No. 55982
Email: jhart@shutts.com
**SHUTTS & BOWEN LLP**
200 S. Biscayne Blvd., Suite 4100
Miami, Florida 33131
Telephone: (305) 358-6300
Facsimile: (305) 381-9982

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of September, 2021, a true and correct copy of

the foregoing has been served via electronic mail to the following CM/ECF Participants and via

U.S. Mail, postage prepaid, to the following non-CM/ECF Participants:

Christian W. Waugh, Esq.
Email: cwaugh@waughgrant.com
Morgan Fayocavitz, Esq.
Email: mfayocavitz@waughgrant.com
Reba Abraham Pearce, Esq.
Email: rapearce@waughgrant.com
Add'l Email: rwood@waughgrant.com
Waugh Grant PLLC
201 E. Pine Street, Suite 315
Orlando, FL 32801
Telephone: 321-800-6008
Facsimile: 844-206-0245

Samuel J. Dubbin, P.A.
Email: sdubbin@dubbinkravetz.com
Dubbin & Kravetz, LLP
1200 Anastasia Avenue
Coral Gables, Florida 33134
Telephone: 305-371-4700

Michael Sokolik, Esq. (Pro Hac Vice)
Email: michaels@squareonehelp.com
1610 Des Peres Road, Suite 150
Suite 150
St. Louis, MO 63131

*Attorneys for The Montgomery Law Firm, LLC, Montgomery & Newcomb, LLC, M. Scott Montgomery, Esq. and W. Todd Newcomb, Esq.*

*Attorney for Square One Development Group, Inc.*

### NON-CM/ECF PARTICIPANTS

CLS, INC. d/b/a ATLAS VACATION
REMEDIES and also d/b/a PRINCIPAL
TRANSFER GROUP
Donnelly Snellen
6906 Route M
Jefferson City, Missouri 65101

JASON LEVI HEMINGWAY
300 East Lafayette Street
Springfield, Missouri 65810

PRINCIPAL TRANSFER GROUP, LLC
Donald M. Brown
111 W Broadway
Bolivar, Missouri 65613

*Glennys Ortega Rubin*
**GLENNYS ORTEGA RUBIN, ESQ.**